## TRAYWICK v. GUNN. (No. 3354.)

Court of Civil Appeals of Texas. Texarkana.
Feb. 24, 1927.

**1. Principal and surety ⟨=⟩145(1)—Judgment requiring execution sale of principal's property before resort to surety's adjudged latter's liability that of surety only, and subject to exoneration by release of execution against principal's property (Rev. St. 1925, arts. 6244–6248).**

In legal effect, judgment foreclosing attachment lien and ordering sale of principal debtor's property before resort by execution to surety's property for balance of amount of judgment adjudged surety liable only in such character, and his rights could not be violated or disregarded by plaintiff, under Rev. St. 1925, arts. 6244–6248, by agreement releasing principal's property from lien and extending time for payment without exonerating him of liability.

**2. Principal and surety ⟨=⟩108(1), 115(1)— Judgment creditor performing agreement without consideration to release property from judgment lien and entend time for payment was bound.**

Judgment creditor, agreeing to release principal debtor's property from lien and extend time for payment without surety's consent, became bound thereby on actual perform-

ance, though agreement lacked sufficient consideration while executory.

**3. Principal and surety ⟨=⟩172—Surety held entitled to full exoneration by injunction against execution sale.**

Surety *held* entitled to specific equitable relief of exoneration in full by injunction against execution sale after release of principal debtor's property from judgment lien and extension of time for payment without surety's consent.

Appeal from District Court, Lamar County; Newman Phillips, Judge.

Suit by F. T. Gunn against J. R. Traywick and another. Judgment for complainant, and the defendant named appeals. Affirmed.

The appellee, who was the complainant, filed his bill against the defendant praying for an injunction against the sale of certain lands levied on under a writ of execution, and against the issuing of an execution on a judgment obtained against him. The sheriff was also made a formal party defendant. The bill sets up three grounds for relief against the judgment, viz.: (1) That the judgment had become dormant, as no execution had been issued within 12 months after its rendition; (2) that the judgment was void for lack of summons or appearance of the appellee; and (3) that the appellee, a surety, was discharged in virtue of the actual release from levy and lien and order of sale of property of the principal debtor sufficient to satisfy the judgment, and the giving of farther day for payment of the judgment, in pursuance of a valid written agreement between the plaintiff in the judgment and the principal judgment debtor made subsequent to the judgment, the appellee not being a party to such agreement and having no knowledge in respect to the same. The defendant answered the bill by general and special denial, and specially pleaded that the agreement or understanding was between him and the appellee and the principal in the judgment for a *temporary delay in the enforcement of the execution*, and such delay was in accordance therewith for the special benefit of appellee and the principal judgment debtor.

The court, in a trial before him without a jury, found against the first and second, but sustained the third ground set up in the bill, and rendered a judgment for the complainant permanently enjoining the defendant as prayed for.

The court made findings of fact, which are, substantially, that on October 1, 1920, Dudley Bly and F. T. Gunn executed and delivered to appellant, J. R. Traywick, a note in the sum of $2,500 payable to him on January 1, 1922. The note appeared on its face as a joint note, but in fact F. T. Gunn was merely an accommodation surety, as known to the payee. At the maturity of the note F. T. Gunn, the surety, requested J. R. Traywick to proceed by suit to enforce and collect the

note out of the principal debtor, as he had property liable to pay it. J. R. Traywick, complying with the request, on January 9, 1922, filed suit on the note against both Dudley Bly and F. T. Gunn, at the same time suing out an attachment on 500 acres of land, property of Dudley Bly. It appears that 200 acres of the land was subject to homestead claim by Dudley Bly. On February 27, 1922, at a regular term of court, a personal judgment was entered for J. R. Traywick against the makers of the note and foreclosing the attachment lien on the land, with order of sale, "as the property of Dudley Bly." The further recital is:

"And if the lands are not sold for sufficient funds to pay off and fully discharge said judgment and costs, then the plaintiff to have execution against both defendants or either of them for such sum as will fully satisfy the judgment."

An order of sale was timely issued and placed in the hands of the sheriff on April 6, 1922, and the said property was fully advertised for sale on the first Tuesday in May, 1922, by the sheriff. On April 26, 1922, before the day of sale under the writ, Dudley Bly and the plaintiff, J. R. Traywick, entered into a written agreement, as stated in the findings:

"Whereby all the lands were released from the foreclosure and prospective sale under the order of sale the agreement on part of Dudley Bly that he would procure a loan on the 200 acres of land, which was homestead, by January 1, 1923, and would apply the proceeds of the loan on the judgment of the plaintiff and on a debt owing by Dudley Bly to Walter Nix, who had also sued Dudley Bly and had levied upon same lands subject to levy and lien of the plaintiff, Traywick."

F. T. Gunn had no knowledge of the agreement when it was made, and did not authorize it. As stated in the findings:

"The 300 acres of land released under the agreement was at that time of the value of approximately $100 per acre and was incumbered for $6,000. The 300 acres was no part of Dudley Bly's homestead, and would have brought at forced sale sufficient above the incumbrance on it to have satisfied the judgment of the plaintiff, Traywick."

Dudley Bly timely effected a loan upon the 200 acres in the sum of $2,300 and paid off the Walter Nix suit and paid to J. R. Traywick $825.34 on his judgment, leaving $2,217.95 unpaid. As found by the court:

"After the above transactions J. R. Traywick took no further steps to have the sale made under the foreclosure of the attachment lien. In the year 1924 Dudley Bly went into bankruptcy, surrendering all of his estate except his homestead. In the meantime property values had gone down, and J. R. Traywick realized nothing on the judgment debt through the bankruptcy proceedings. On May 5, 1925, there was unpaid on the judgment $2,291.95, and to collect which sum J. R. Traywick had an execution issued and levied upon land of F. T. Gunn. To prevent the sale is sought by Gunn in this proceeding."

The conclusion of law filed by the court reads:

"F. T. Gunn was discharged of the judgment because of the agreement of J. R. Traywick made with Dudley Bly, extending time of payment of the judgment to January 1, 1923, and whereby that part of the property of Dudley Bly which was subject to forced sale and sufficient at the time to pay the judgment against Dudley Bly was released from the lien created by the attachment. As well, F. T. Gunn is entitled to enjoin the present sale of his property levied upon to make the balance of the original judgment rendered against Dudley Bly and himself."

The findings of fact, fully supported by the evidence, are not challenged on the appeal. Error is predicated upon the legal effect, as pronounced by the court, attaching to the facts so found to be proven.

Johnson, McCoy & McMillan, of Dallas, for appellant.

Hutchison & Hutchison, of Paris, for appellee.

LEVY, J. (after stating the facts as above). [1] The appellant relies, for error in the court's conclusion, upon the points, in effect, that: (1) On the face of the original judgment both of the defendants were adjudged principals, and not in the relation of principal and surety, and therefore the judgment is conclusive of such fact; and (2) that although a surety, in fact, the appellee was not discharged, because the agreement to give time and to stay the order of sale in consideration of payment of part of the judgment was of no legal validity or effect.

The relief against the execution, as in equity, was based entirely upon facts newly arising after the judgment. The plaintiff in the judgment agreed with the principal debtor to release such debtor's property from levy and lien and order of sale, and to give further day for payment, without the wish or consent of appellee, a surety. The agreement was actually adhered to and performed, and there was mutual satisfaction of expectations created by the agreement. There was no redetermination of issues already heard and adjudicated in the original judgment. Upon the face of the original judgment the appellee stands confessed in the character of a surety. And it was within the authority of the court, correctly deciding the case, as we think he did, to grant full relief by injunction, as done, of exoneration of the surety of all liability under the judgment.

As proven, the suit, as well as the attachment, was commenced at the request of the surety, for his own benefit, as well as that of the plaintiff in the suit, under such circumstances as might reasonably have been ex-

(293 S.W.)

pected at the time would have insured the payment of the note from the principal and thus have relieved the surety altogether. And, as shown, the judgment of the court foreclosed the attachment lien and ordered sale of the property of the principal before resort by execution to so much of the property·of the surety as might be necessary to make the balance, if any, of the amount of the judgment. In legal effect the appellee was adjudged liable only in the character of surety. Such being the statutory rights of the surety, in the requiring of suit to be brought and in the enforcement of the judgment by levy, they could not be violated or disregarded by the plaintiff in the suit. Articles 6244–6248, R. S. 1925. For the surety's legal right was in nowise at the mercy of any one's discretion. There was a sufficient amount of property of the principal levied on, which, if it had been sold under the order of sale already timely in the hands of the sheriff for execution, would have made the full sum called for in the original judgment. All the liability of both the principal and the surety would thereby have been satisfied and become extinct but for the property's being actually released and becoming unavailable to the lien in pursuance of an express agreement of release and the extension of time of execution. Hence the surety was thereby caused to lose and be defeated in what his legal right entitled him to claim, of having the judgment satisfied out of the property of the principal.

[2, 3] Although such agreement might be regarded as lacking sufficient consideration in its inception and while executory, yet the appellant would be bound by the execution of the agreement by actual performance, and he cannot now undo his act. The surety became entitled to specific equitable relief of exoneration in full, as has been fully-settled. Pilgrim v. Dykes, 24 Tex. 384; Parker v. Nations, 33 Tex. 210; Crook v. Lipscomb, 30 Tex. Civ. App. 567, 70 S. W. 993; Yeary v. Smith, 45 Tex. 56; Blocksom v. Bank & Trust Co. (Tex. Com. App.) 251 S. W. 1025; 5 Elliott, Con. § 3971; 32 Cyc. p. 216.

The judgment is affirmed.