## ROEDENBECK FARMS, Inc., et al. v. BROUSSARD et al.

### No. 3361.

Court of Civil Appeals of Texas. Beaumont.

Feb. 3, 1939.

Rehearing Denied Feb. 15, 1939.

Fulbright, Crooker & Freeman, C. A. Leddy, Kemper, Hicks & Cramer, F. Warren Hicks, Kayser, Liddell, Benbow & Butler, Cole, Patterson & Cole, Ewing Werlein, Edward S. Boyles, J. R. Hill, P. Harvey, Jack Binion, W. O. Huggins, Lewis Dickson, Jr., Cecil N. Cook, and John C. Dawson, all of Houston, R. E. Schneider, Jr., of George West, LeRoy McCall, of Beaumont, E. H. Cain, of Anahuac, and Albert G. Avery, of New York City, for appellants.

Orgain, Carroll & Bell, E. E. Easterling, and W. D. Gordon, all of Beaumont, E. B. Pickett, Jr., of Liberty, A. W. Marshall, of Anahuac, and Felix A. Raymer, Farish, Durno & Gordon, and M. S. McCorquodale, all of Houston, for appellees.

WALKER, Chief Justice.

Owning in fee simple H. & T. C. Secs. Nos. 63, 75, and 79 in Chambers County, on the 10th day of December, 1915, H. Roedenbeck executed to E. J. LeBlanc, trustee, a deed of trust on these three sections of land, filed for record in Chambers County on the 14th day of December, 1915, to secure the payment of four promissory notes executed and delivered by Roedenbeck to J. E. Broussard, of even date with the deed of trust, numbered 1, 2, 3, and 4, each for the sum of $2,880, and payable, respectively, 2, 3, 4, and 5 years after date. On the 16th day of April, 1919, Roedenbeck sold Secs. 75 and 79, and Broussard released these sections from his deed of trust lien. In the release it was stipulated that the release of Secs. 75 and 79 was not to effect the lien against Sec. 63 to secure the balance of the Roedenbeck indebtedness to Broussard, which amounted to the sum of $4,630. A part of the purchase price was paid by Roedenbeck to Broussard, and by him applied as a credit on the indebtedness of 1915, secured by the deed of trust, and a part on other indebtedness against the property. Roedenbeck retained about $1,500 of the consideration received by him for Secs. 75 and 79. Roedenbeck defaulted in the payment of the balance due on the indebtedness, and, under instructions from Broussard, LeBlanc, the trustee, sold Sec. 63 on the 5th day of May, 1931, and Broussard became the purchaser; and on the 6th day of May, 1931, he executed to Broussard his deed as trustee, conveying to him Sec. 63. On the 29th day of June, 1933, Broussard executed to the Humble Oil and Refining Company a mineral lease on Sec. 63, and on the 30th day of June, on a valuable consideration, he conveyed Sec. 63 to himself, C. E. Broussard, and J. E. Broussard, Jr., as trustees of the Broussard Trust. On the 27th day of August, 1934, the Broussard Trust conveyed to Marrs McLean and R. R. McDonald, each, a ¼ interest in the mineral rights in Sec. 63, subject to the mineral lease held by Humble Oil and Refining Company. J. E. Broussard and those holding under him will be referred to as appellees.

On August 3, 1917, H. Roedenbeck conveyed to Sebo Harms and wife, of the State of Illinois, the N. W. ¼ of Sec. 63, retaining in his deed the vendor's lien against the land to secure the payment of $1,600 of the purchase price, evidenced by promissory notes. On the 2d day of July, 1917, Roedenbeck conveyed to P. Hansen the N. E. ¼ of Sec. 63, retaining the vendor's lien to secure the payment of $1,050 of the purchase money, evidenced by promissory notes; these notes were paid by Hansen, and Roedenbeck executed to him a release of the vendor's lien. On the 27th day of December, 1917, Roedenbeck conveyed to Samuel Miller and wife, of the State of Indiana, the S. ½ of Sec. 63, retaining in his deed the vendor's lien against the land to secure the payment of $1,926 of the purchase money, evidenced by promissory notes. Neither of Roedenbeck's grantees assumed any part of his indebtedness to Broussard, secured by the deed of trust against Secs. 63, 75, and 79, nor did they take title subject to the Broussard indebtedness. The Harms deed was filed for record in Chambers County on the 11th day of March, 1920; the Miller deed, on the 4th day of January, 1918; and the Hansen deed, on the 5th day of July, 1919. On the 29th day of March, 1924, Roedenbeck conveyed Sec. 63 to the Roedenbeck Farms, Inc., a corporation. On the 25th day of February, 1935, Harms and wife conveyed to H. Merlyn Christie, on the consideration of $600, their interest in Sec. 63; about the same time Mrs. Miller

and the heirs of her deceased husband conveyed to Christie, on the consideration of $2,000, their interest in Sec. 63; on the 28th day of March, 1935, Hansen, on the consideration of $2,000, conveyed to Christie the N. E. ¼ of Sec. 63, reserving a 1/32 royalty interest.

On the 25th day of October, 1935, Roedenbeck Farms, Inc., instituted this suit in trespass to try title against appellees and the other appellants to recover the title and possession of Sec. 63, containing 640 acres. Appellees answered by pleas of not guilty and by special pleas of the several statutes of limitation, etc. Though instituted as an action in trespass to try title, in fact the purpose of the suit, as between appellants and appellees, was to cancel and annul the sale made by LeBlanc, trustee, to J. E. Broussard on the 5th day of May, 1931; the issue to cancel this deed was made for the first time by pleadings filed in May, 1937.

The case was tried to a jury, and on its verdict and the undisputed facts, judgment was entered against appellants that they take nothing against appellees insofar as they held under J. E. Broussard. Since the judgment of the lower court must be affirmed, the pleadings and evidence of appellants, as among themselves, become immaterial. The record consists of a transcript of 855 pages, and a statement of facts of fourteen volumes of 3087 pages. The great record and the many issues have placed upon the parties a tremendous burden of briefing, and we extend to counsel our appreciation of the able briefs filed by them. We shall review only the issues and their supporting facts, attacking the validity of the sale made by LeBlanc, the trustee, to Mr. Broussard on the 5th day of May, 1931. The appeal was perfected to the Galveston Court of Civil Appeals, and transferred to this court by order of the Supreme Court.

Appellants contend that they are entitled to equitable relief on the ground that Mr. Broussard released from his deed of trust Secs. 75 and 79 without requiring Mr. Roedenbeck to pay to him, as a credit on his indebtedness, all the proceeds of the sale. For a subsequent purchaser of mortgaged premises to invoke the rule that the mortgagee may not release from his mortgage other portions of the mortgaged premises, without crediting the mortgage debt with the value of the premises released, he must allege and prove that the mortgagee acted with knowledge of his claim. Biswell v. Gladney, Tex.Com.App., 213 S.W. 256; Watson v. Vansickle, Tex. Civ.App., 114 S.W. 1160; Brown v. Gatewood, Tex.Civ.App., 150 S.W. 950; Gann v. Phillips, Tex.Civ.App., 268 S.W. 1060, 1061. On the verdict of the jury, at the time Broussard released Secs. 75 and 79 from his deed of trust lien, he had no actual notice that Roedenbeck had conveyed Sec. 63 to the Harms, the Millers, and Hansen. The fact that some of the deeds had been recorded in the deed records of Chambers County was not constructive notice to Broussard of the claim of title of the grantees, as subsequent purchasers under Roedenbeck; Biswell v. Gladney, supra. If it be conceded that the Harms, the Millers, and Hansen were in possession, in person or through their tenants, of the land conveyed to them respectively by Roedenbeck, such possession did not operate as notice to Broussard of their equitable rights, as subsequent purchasers, to have applied as a credit on Roedenbeck's indebtedness to Broussard, the value of Secs. 75 and 79. Gann v. Phillips, supra. So, since Broussard had neither actual nor constructive notice of the claims of the subsequent purchasers, they cannot invoke against him and those holding under him, the equitable right invoked by this proposition. On this conclusion, we pretermit a discussion of appellees' other counter propositions against the equitable right asserted by the subsequent purchasers.

Appellants' second attack on the deed of trust lien and the sale made by the trustee is based on their propositions that, long prior to the trustee sale, the Broussard debt against Roedenbeck was barred by limitation; on this proposition they claim to hold Sec. 63 free of the Broussard debt. We have given above the dates, maturity dates, and the amounts of Roedenbeck's four promissory notes to Broussard; the date of the deed of trust; the disposition made by the parties of the proceeds of the sale of Secs. 75 and 79; and have made the statement that, in releasing Secs. 75 and 79 from his deed of trust, Broussard expressly stated that the release was not to effect his lien as it existed against Sec. 63 to secure the balance of his debt. By the undisputed facts it was shown that, on May 15, 1919, when Roedenbeck paid to Broussard a part of the proceeds of the sale of Secs. 75 and

79, the mutual understanding between Roedenbeck and Broussard was that Broussard was to cancel and surrender to Roedenbeck notes Nos. 1 and 2, which, at that time, were past due; notes Nos. 3 and 4 were not due; through a mutual mistake, Broussard's book-keeper surrendered to Roedenbeck notes Nos. 3 and 4. On the 19th day of April, 1923, after Hansen had paid to Roedenbeck his vendor's lien notes against the N. E. ¼ of Sec. 63, and after notes Nos. 1 and 2, had they not been paid, were barred by limitation, in the exercise of due diligence after the discovery of the mistake in surrendering to Roedenbeck notes Nos. 3 and 4 instead of notes Nos. 1 and 2, Roedenbeck, Broussard, and LeBlanc, the trustee, entered into a written contract to the following effect: The facts of the mistake in the surrender by Broussard to Roedenbeck of notes Nos. 3 and 4 instead of notes Nos. 1 and 2 were recited in detail; notes Nos. 1 and 2 were substituted for notes Nos. 3 and 4; and further as follows;

"Whereas, said Notes Nos. One and Two hereby substituted for Notes Nos. Three and Four, are long past due and unpaid, and the said Herbert Roedenbeck is desirous to have said notes extended, so that the due dates of said past due notes shall be January 1st, 1924;"

"Now, therefore, in consideration of the extension of the term of payment of said notes made by the said J. E. Broussard the legal holder of same, I, the said Herbert Roedenbeck, do hereby renew, perpetuate, ratify and affirm said debt, and agree to pay same on the 10th day of December, 1923, and agree that the deed of trust lien given to secure the same shall remain in full force and effect until said notes are paid, according to their face, terms, tenor and reading, and agree to the substitution of notes One and Two for Three and Four."

Roedenbeck was the only one of the appellants who was a party to that contract or, at the time it was executed, even knew of its execution. On these facts, appellants contend that all of the Broussard indebtedness against Roedenbeck was barred by limitation when the renewal contract was executed on the 19th day of April, 1923, and that the contract did not have the effect to renew the indebtedness against them; they contend that they hold Sec. 63 free of the Broussard lien. We overrule that contention. On the day the renewal contract was executed by the terms of the original contract notes Nos. 3 and 4 were not barred by limitation. It was the intention of the parties, Roedenbeck and Broussard, that notes Nos. 1 and 2 should be paid and delivered to Roedenbeck, and not notes Nos. 3 and 4. The mistake of the book-keeper in cancelling and delivering to Roedenbeck notes Nos. 3 and 4, instead of notes Nos. 1 and 2, did not, in law or in equity, constitute a payment of notes Nos. 3 and 4. The deed of trust secured Broussard's debt, and not merely the notes as evidence of the debt. The payment was made as a credit against the Roedenbeck indebtedness, and the book-keeper, through his mistake, did nothing more than to surrender to Roedenbeck the wrong notes in evidence of the payment. When a contract has been made, and the parties make a mistake in its execution, equity, in an action not barred by limitation, will grant relief against the mistake. A court of equity would have corrected the mistake for Broussard, and in an action between him and Roedenbeck for that purpose, the subsequent grantees under Roedenbeck would not have been necessary parties; this follows because Broussard's cause of action against Roedenbeck for correction of the mistake was not barred by limitation when the contract of extension and correction was made. It is the law that the parties can do for themselves what the courts would compel them to do. McCrory et al. v. Lutz, Tex. Civ.App., 62 S.W. 1094, 1095. The instrument, voluntarily executed by the parties correcting the mistake, did not create a new contract between Roedenbeck and Broussard, but was mere evidence of the original contract. Hodges v. Moore, Tex. Civ.App., 186 S.W. 415. Roedenbeck owed Broussard an unpaid balance on his debt, evidenced by notes Nos. 3 and 4; the mistake in applying the credits was corrected; and the indebtedness was renewed to be paid on the 10th day of December, 1923. The proposition of law that a cancellation and surrender of notes Nos. 3 and 4, on the facts stated, did not release Sec. 63 from that part of Broussard's debt against Roedenbeck, evidenced by notes Nos. 3 and 4, is so clearly supported by the authorities that it would serve no useful purpose to review them. See First State Bank of Amarillo v. Jones, 107 Tex. 623, 183 S.W. 874; Carlisle v. Holland, Tex.Civ.App., 289 S.W. 116.

■ , But appellants say that Roedenbeck's subsequent grantees were necessary parties to the contract of correction, renewal and extension; in this contention they are in error. The subsequent grantees, having taken their title before any part of Broussard's debt was barred by limitation, and not having purchased subject to the Broussard indebtedness, and not having assumed any part of the Broussard indebtedness, took their title from Roedenbeck subject to his right and power, before his indebtedness to Broussard was barred by limitation, to enter into a contract with Broussard to extend the indebtedness and the lien. Howell v. Townsend, Tex.Civ.App., 217 S.W. 975; Wilkinson v. First National Bank, 118 Tex. 202, 13 S.W.2d 346; Novosad v. Svrcek, 129 Tex. 34, 102 S.W.2d 393. It follows that the contract of correction, renewal and extension was binding not only upon Roedenbeck, but also upon his subsequent vendees and all parties holding under them; that those holding under the subsequent vendees were also bound is supported by Hill State Bank of Weimar v. Schindler, Tex. Civ.App., 33 S.W.2d 833; Schlottmann v. Wise, Tex.Civ.App., 86 S.W.2d 44. We pretermit a discussion of appellees' counter proposition that Roedenbeck and Broussard "had the right to renew the debt and lien even though the debt and lien was then barred by the four year statute of limitation, and such renewal was binding upon the Millers, the Harms, and Hansen."

On the 3d day of December, 1927, Broussard's indebtedness against Roedenbeck, before any part of it was barred by limitation, by contract in writing between them, filed for record on the 8th day of March, 1928, was again renewed and extended, payable on the 1st day of January, 1929. The authorities, giving Roedenbeck authority and power to renew the notes by his contract of April 19, 1923, support his right and power to enter into the contract of renewal and extension of the 3d day of December, 1927.

On the facts and legal conclusions stated above, on the 5th day of May, 1931, Broussard held a valid lien against Sec. 63 to secure the payment of the balance due him by Roedenbeck on the indebtedness of 1915; and on that day, as stated above, on the trustee's sale, he purchased Sec. 63. Appellants attack the regularity and validity of the sale by the trustee, contending that it was absolutely void.

The original notes and deed of trust were executed on the 10th day of December, 1915, when the amendment of 1915 to Art. No. 3759, Rev.St.1911, was in effect, Acts 1915, 1st called Sess., c. 15, the provisions as to notice reading: "Notice of such proposed sale shall be given by *posting written notice thereof for three consecutive weeks prior to the day of sale in three public places in said county . or counties, one of which shall be at the court house door of the county in which such sale is to be made,* * * * or such notice may be given as required by statute in case of judicial sale, or such notice may be given in either of said methods, or as may be provided for in said deed of trust or contract lien." (Italics ours.)

It is conceded that the trustee gave notice of his sale as provided for in that portion of the amendment written in italics; under the facts, no other sort of notice was given though it was provided in the deed of trust that, in making his sale, the trustee should give notice to "such parties as are interested" by delivering or mailing a copy of the notice "to their last known address."

Appellants contend that Roedenbeck and his subsequent vendees, and those holding under them, fall within the classification of "such parties as are interested," and that the failure of the trustee to give them notice as provided in the deed of trust rendered his sale absolutely void. We overrule appellants' proposition.

■ For the purpose of this opinion, we shall not define the term "such parties as are interested," but shall decide the point raised by appellants' proposition on our conclusion, that, in giving his notice, the trustee literally complied with the amendment of 1915, and that his sale was valid, vesting in Broussard the fee simple title to Sec. 63, and extinguishing the claims of Roedenbeck and all parties holding under him adverse to appellees.

■ We quote the following proposition from appellants' brief filed on the 10th day of January, 1939, after submission on the 22d day of December, 1938: "Throughout appellees' brief they assume that the trustee had the power to make said sale and execute the deed. The deed of trust does not give the trustee this power unless and until he gives the notices provided for in the deed of trust." By force of law, the amendment of 1915

was made a part of the deed of trust to the same effect as if it had been written therein by the parties; Kerr v. Galloway, 94 Tex. 641, 64 S.W. 858; Wylie v. Hays, 114 Tex. 46, 263 S.W. 563; and when so construed, we agree with appellants' proposition that the power of sale, granted the trustee by the terms of the deed of trust, could be exercised by him only by giving the notice of sale provided for by the deed of trust. International Bldg. & Loan Ass'n v. Hardy, 86 Tex. 610, 26 S. W. 497, 24 L.R.A. 284, 40 Am.St.Rep. 870; Galloway v. Kerr, supra; W. C. Belcher Land Mortgage Co. v. Taylor, Tex.Com. App., 212 S.W. 647. So, when by force of law the amendment of 1915 is read into the deed of trust, we find that the parties by contract stipulated for three alternative methods of giving notice, as follows: (1) By posting written notices thereof for three consecutive weeks prior to the day of sale in three public places, one of which should be at the court house door of the county in which the sale was to be made; "or" (2) by giving the notice required by statute in judicial sales; "or" (3) the "method provided for in the deed of trust," by giving notice by "advertising the time, place and terms of the sale * * * for at least twenty days successively next before the day of sale by posting up or causing to be posted up written or printed notices thereof, at three public places in each county where said real estate is situated, one of which shall be at the court house door of such county, and by delivering or mailing a copy of said notice to such parties as are interested to their last known address"; and methods (1) and (2) were made a part of the deed of trust to the same effect as if they had been written therein by the parties. It is our conclusion that the notice given by the trustee was in literal compliance with the provisions of the deed of trust. The word "or" as used in the amendment, regulating the method of giving notice, should be given an alternative meaning, allowing the trustee the power to exercise a choice among the three statutory methods—the power to choose alternative No. 1 as against alternatives Nos. 2 and 3. This was the construction given the amendment of 1915, 1st Called Sess., c. 15, p. 32, by our Supreme Court, speaking through its Commission of Appeals, in Freece v. Truskett, 130 Tex. 90, 106 S.W. 2d 675, 677. In that case the only notice of the sale given by the trustee was that

"provided for" in the deed of trust; the court held that the amendment was "clearly remedial," and that it "was manifestly intended to make a sale valid when based upon notice as provided for in the deed of trust," the third alternative method of the amendment as we have numbered them above. Where the trustee in giving notice complied with either the first or the second alternative method, as we have numbered them above, to hold that he should also have complied with the third alternative method—this being appellants' proposition —when compliance with the third method alone would make the sale valid, would simply destroy the usefulness of methods (1) and (2), and would convict the Legislature of committing a vain act by making methods (1) and (2) a part of the amendment. When possible, the courts must give effect to all the language of an Act of the Legislature. In this case, to effectuate the plain legislative intent in adopting the amendment of 1915, we are compelled to say that the Legislature provided for three alternative methods by which the trustee could give notice of his sale, either one, when duly performed, making the sale valid; Freece v. Truskett, supra, and that these methods, by the contract of the parties, were made conditions of the deed of trust.

On our construction of the amendment of 1915, appellants attack it as being unconstitutional; they say we are giving it a construction which constitutes an unlawful interference by the Legislature with the right and power of private contract. In Wylie v. Hays, supra, the Supreme Court held the amendment constitutional; appellants say that this holding was justified on the ground that the issue there made invoked the police power of the state. But they insist, on the facts before us, that the police power was not invoked; that the provisions of the deed of trust calling for personal notice to "such parties as are interested" did not invoke the police power. The facts of this case do not invoke appellants' constitutional question. Where the amendment, and nothing else as to notice, was written into the deed of trust, the parties simply contracted for notice of sale to be given in one of the three alternative methods. The point is made clear by the amendment of 1925, Art. No. 3810, pertinent parts reading, "Notice of such proposed sale shall be given by posting written no-

tice thereof for three consecutive weeks prior to the day of sale in three public places in said county or counties, one of which shall be made at the courthouse door of the county in which such sale is to be made * * * *or the owner of such real estate may, upon written application, cause the same to be sold as provided in said deed of trust or contract lien.* (Italics ours.)

By this amendment, the Legislature construed the pre-existing law as not giving to the contracting parties the right, when nothing more was provided for in the deed of trust than the express terms of the statute, to demand that written notice of the sale should be given to the mortgagor. The amendment of 1925 gave the mortgagor, upon written· application, the right to demand that his land be sold in the specific manner provided for by the deed of trust to the exclusion of the other statutory methods. In the case at bar, had the parties written into the contract the conditions of the 1925 amendment, and then had the trustee failed to comply with those conditions, we would have before us appellants' constitutional question. But the parties did not do that; they simply wrote into the contract, by force of law, the three alternative methods provided for in the amendment, and these three alternative methods were of equal dignity, each with the other. We are not holding that the parties did not have the right to write into the deed of trust an exclusive method of notice, but only that they did not so contract.

The law, as it existed prior to the 1915 amendment, does not give support to appellants' proposition that the failure to give notice to "such parties as are interested" made the sale void. Prior to the enactment of 1889, c. 118, p. 143 (Art. No. 2369 of the 1895 codification), parties had absolute freedom of contract as to the conditions of a sale by the trustee under a deed of trust. Int. Bldg. & Loan Ass'n v. Hardy, supra. As to notice, Art. No. 2369 (Act of 1889) provided that "notice shall be given as now required in judicial sale." Construing that Act, the courts held that its provisions as to notice were mandatory; Fischer v. Simon, 95 Tex. 234, 66 S.W. 447, 882; Smith v. Allbright, Tex. Civ.App., 261 S.W. 461. But it was also held that nothing in the Act denied the parties the right to contract for additional notice, not an alternative but a cumulative

notice, and where a provision as to notice was inserted in the deed of trust that it *also* must be complied with. Chamberlain v. Trammell, 61 Tex.Civ.App. 650, 131 S. W. 227. In these respects, the amendment of 1915 constituted a radical departure from the Act of 1889; it expressly authorized the parties, as an *alternative* but not as a *cumulative* right, to contract as to a method of notice. But it did not give them, in express terms, the right to contract for an exclusive method. Roedenbeck and Broussard did not contract for an exclusive method of giving notice but, as stated above, only for the three statutory alternative methods.

In our judgment, what we have said disposes of the determinative issues of this appeal, and we pretermit a discussion of all other propositions and counter propositions.

The judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.