Clarence LONG, Sr., et al., Appellants,

v.

NCNB–TEXAS NATIONAL BANK as Assignee of the Federal Deposit Insurance Corporation as Receiver of the First Republic Bank Victoria, N.A. F/K/A Interfirst Bank Victoria, N.A., Appellees.

No. 13–93–138–CV.

Court of Appeals of Texas,
Corpus Christi.

July 28, 1994.

Bill W. Russell, Victoria, for appellants.

Douglas W. Sanders, Wright & Greenhill, San Antonio, for appellees.

Before SEERDEN, DORSEY and YAÑEZ, JJ.

## OPINION

YAÑEZ, Justice.

Clarence, Stephen and C.L. Long, guarantors of a promissory note, appeal from a summary judgment awarding NCNB–Texas National Bank the deficiency resulting from a realty foreclosure by NCNB. In six points of error, the Longs claim the trial court should have denied NCNB's motion for summary judgment and instead granted their own motion for summary judgment. We disagree and affirm the trial court's judgment.

In August of 1985, Long Engineering executed a deed of trust over realty in Victoria County to secure a $120,000 loan from Inter-First Bank Victoria, predecessor of NCNB. In their capacity as sole shareholders and directors of the company, the Longs guaranteed the note. Long Engineering defaulted and filed for bankruptcy in December of 1989. NCNB then moved for relief from the automatic stay of foreclosure resulting from the bankruptcy proceedings. The bankruptcy court granted NCNB's motion for relief from the automatic stay in an agreed order signed by Long Engineering's attorney.

In May of 1990, NCNB sent notice of the contemplated foreclosure sale to Long Engineering at the address required for such notices, as specified in the deed of trust. This address was abandoned. Although NCNB sent an additional copy of the notice to the attorney representing Long Engineering in bankruptcy, NCNB did not separately notify the president of Long Engineering. In June of 1990, NCNB bought the property at foreclosure sale for $60,500 and demanded that the Longs pay the deficiency. When the Longs refused, NCNB sued to enforce the guaranties and prevailed on summary judgment.

■ In summary judgment proceedings, movants must establish their entitlement to judgment as a matter of law by showing that no disputed fact issue prevents them from conclusively proving every element of their cause or defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972); *MBank Corpus Christi N.A. v. Shiner*, 840 S.W.2d 724, 725 (Tex.App.—Corpus Christi 1992, no writ). When both parties move for summary judgment, each needs to meet this standard and neither may prevail merely because the other failed to discharge its burden of proof. *Buccaneer's Cove, Inc. v. Mainland Bank*, 831 S.W.2d 582, 583 (Tex.App.—Corpus Christi 1992, no writ); *Atrium v. Kenwin Shops of Crockett, Inc.*, 666 S.W.2d 315, 318 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). The burden shifts once the movant establishes the right to summary judgment;

the nonmovant must then present any issue that would avert the summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Diehl v. Rocky Mountain Communications, Inc.*, 818 S.W.2d 183, 184 (Tex.App.—Corpus Christi 1991, writ denied).

■ Movant's appellate burden demands that we resolve each doubt and indulge every reasonable inference in favor of the nonmovant while accepting the truth of all evidence against the summary disposition. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Argonaut Ins. v. Allstate Ins.*, 869 S.W.2d 537, 537 (Tex.App.—Corpus Christi 1993, writ denied). Reviewing the summary judgment evidence in this light, we must determine whether such proof disposes of every genuine issue of material fact necessary to establish the movant's cause or defense. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Valero Energy Corp. v. M.W. Kellogg Constr. Co.*, 866 S.W.2d 252, 257 (Tex.App.—Corpus Christi 1993, writ denied).

Regarding the Longs' liability under the guaranties, four material elements comprise NCNB's cause of action:

(1) The existence and NCNB's ownership of the guaranties;

(2) Performance under the guaranties by InterFirst Bank Victoria and its successor, NCNB;

(3) Long Engineering's default on the underlying note so as to activate the Longs' liability under the guaranties; and

(4) The Longs' refusal to honor the guaranties.

*See FDIC v. Attayi*, 745 S.W.2d 939, 948 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Barclay v. Waxahachie Bank & Trust Co.*, 568 S.W.2d 721, 723 (Tex.Civ.App.—Waco 1978, no writ). The parties have agreed to facts establishing all four elements of NCNB's cause, and such stipulations may appropriately evince a summary judgment. Tex.R.Civ.P. 166a(c). Moreover, this suit particularly invites summary judgment in that it requires little more than our interpretation of an unambiguous written agreement. *RGS, Cardox Recovery, Inc. v. Dorchester Enhanced Recovery Co.*, 700 S.W.2d 635, 638 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

The Longs' first two points of error urge that we recognize a statutory duty to provide notice of a foreclosure sale to guarantors of the underlying note secured by real property. The relevant statute requires notice to "each debtor who, according to the records of the holder of the debt, is obliged to pay the debt." Tex.Prop.Code Ann. § 51.002(b)(3) (Vernon 1989). Specifically, the Longs ask that we read "debtor" to encompass both the maker and the guarantor of the note so that notice serves as an additional element of NCNB's suit to enforce the guaranties.

Construing the notice requirement in a suit for deficiency under a note secured by personal property, we have interpreted the term "debtor" to include guarantors. *Hernandez v. Bexar County Nat'l Bank*, 710 S.W.2d 684, 687 (Tex.App.—Corpus Christi), *writ ref'd n.r.e. per curiam*, 716 S.W.2d 938 (Tex.1986) (construing Tex.Bus. & Com.Code Ann. §§ 9.504, 9.505 (Tex.UCC) (Vernon Supp.1986)); *see also FDIC v. Moore*, 846 S.W.2d 492, 495 (Tex.App.—Corpus Christi 1993, writ denied) (construing Tex.Bus. & Com.Code Ann. § 9.504(c) (Tex.UCC) (Vernon 1991)). A vigorous debate on the effect of disputed notice under the Business and Commerce Code divides the various courts of appeal. The two schools of thought differ over whether notice represents an element of the cause or if lack of notice merely provides an affirmative defense. *Compare Smith v. FDIC*, 800 S.W.2d 648, 650 (Tex.App.—Houston [1st Dist.] 1990, writ dism'd agr.) *with Daniell v. Citizens Bank*, 754 S.W.2d 407, 409 (Tex.App.—Corpus Christi 1988, no writ).

Conspicuously, no such debate animates the issue now before us. In *Hernandez*, we concluded that the Business and Commerce Code notice requirement bars liability for deficiency absent notice of the foreclosure sale to the guarantor. *Hernandez*, 710 S.W.2d at 687. We explicitly distinguished, however, between guarantors of a loan secured by realty under the Property Code and a loan secured with consumer goods under the Business and Commerce Code. *Id.* The

identical distinction underlies the *Attayi* court's analysis of a guarantor's right to notice of the foreclosure sale under the two codes. *Attayi,* 745 S.W.2d at 948. In a secured party's appeal from a summary judgment denying deficiency, the *Attayi* court addressed the material elements of the secured party's cause of action:

> As appellee correctly argues, when a guaranty is made on a promissory note that is secured by *personal property,* the Texas UCC article 9 applies. (citations omitted). Notice of the forced sale was an element of appellant's cause of action. (citations omitted).
>
> Appellant cites *Barclay v. Waxahachie Bank & Trust Co.,* 568 S.W.2d 721 (Tex. Civ.App.—Waco 1978, no writ), as authority for the elements of a suit on a guaranty [with no mention of notice as an element].
>
> At issue in *Barclay* were guaranties on promissory notes secured by *real property;* on the facts of the case the *Barclay* court's listing of the elements of a guaranty suit was correct. However, as stated above, the guaranty in the instant case was secured by *personal property.*

*Attayi,* 745 S.W.2d at 948.

Both *Hernandez* and *Attayi* contrast a guarantor's established right to notice if chattel secures the note with the absence of such a right under the guaranty of a note secured by realty. Neither the Business and Commerce Code nor the Property Code explicitly define "debtor" to include guarantors. Yet we discriminate between the two types of guaranty contracts because of the disparate legislative histories of their respective governing codes.

In May of 1965, Texas adopted the Official Text of the Uniform Commercial Code, with minor modifications irrelevant to this case, as chapters 1 through 9 of the Business and Commerce Code. *See generally Robinson v. Garcia,* 804 S.W.2d 238 (Tex.App.—Corpus Christi 1991), *writ denied per curiam,* 817 S.W.2d 59 (Tex.1991) (discussing legislative history of Texas UCC). Among the stated purposes of this enactment, chapter 1 particularly lists the goal of making "uniform the law among the various jurisdictions." Tex. Bus. & Com.Code Ann. § 1.102(b)(3) (Tex.

UCC). This policy has encouraged Texas courts to look beyond our jurisdictional borders for guidance in construing the provisions of chapter 9. *See, e.g., MBank El Paso N.A. v. Sanchez,* 836 S.W.2d 151, 153–54 (Tex.1992) (citing § 1.102(b)(3) as grounds for surveying over a dozen jurisdictions before interpreting § 9.503); *Peck v. Mack Trucks, Inc.,* 704 S.W.2d 583, 585 (Tex. App.—Austin 1986, no writ) (noting that majority of jurisdictions include guarantors within term "debtor" under UCC article 9 as one justification for adopting same construction in Texas); *Sunjet, Inc. v. Ford Motor Credit Co.,* 703 S.W.2d 285, 287–88 (Tex. App.—Dallas 1985, no writ) (citing § 1.102(b)(3) as requiring multijurisdictional examination of evidentiary burden on secured party to interpret §§ 9.504, 9.507). The practice of consulting foreign authorities finds further support in the rules of construction contained within the Government Code: "A uniform act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it." Tex.Gov't Code Ann. § 311.028 (Vernon 1988). This method of statutory construction distinctive to the Business and Commerce Code profoundly influences our understanding of chapter 9 and our contextual interpretation of the term "debtor." *See Peck,* 704 S.W.2d at 585.

■ Although chapter 9 of the Business and Commerce Code regulates security interests in personal property and fixtures, it expressly omits governance over "the creation or transfer of an interest in or lien on real estate." Tex.Bus. & Comm.Code Ann. § 9.104(10) (Tex.UCC). In both parameter and underlying purpose, therefore, the notice requirement in chapter 9 evolves under jurisprudential strictures wholly irrelevant to the Property Code. *See McFarlane v. Whitney,* 134 Tex. 394, 134 S.W.2d 1047, 1050 (Com. App.1940). No similar concern for interjurisdictional uniformity controls our reading of the Property Code. This underlying disparity between the various objects of the two codes outweighs the mere appearance of similarity. Consequently, case law illuminating provisions of the Business and Commerce Code fails to influence our interpretation of

the Property Code. *See* Tex.Gov't Code Ann. § 311.023.

To the contrary, we must construe the Property Code in the context of its own particular objects, circumstances, consequences and history. *Id.* The notice requirement in § 51.002 of the Property Code has been the subject of legislative attention in Texas since 1895. *Roedenbeck Farms v. Broussard,* 124 S.W.2d 929, 936 (Tex.Civ. App.—Beaumont), *writ ref'd,* 133 Tex. 126, 127 S.W.2d 168 (1939), *appeal dism'd,* 308 U.S. 514, 60 S.Ct. 145, 84 L.Ed. 438 (1939).

Parties to a deed of trust enjoyed absolute license to contract by agreed terms prior to March of 1889, when the statute requiring notice of foreclosure sales became effective. *International Bldg. & Loan v. Hardy,* 86 Tex. 610, 26 S.W. 497, 500 (1894); *see generally Armeta v. Nussbaum,* 519 S.W.2d 673 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) (discussing history of nonjudicial foreclosure under Texas law). The 1889 enactment allowed for contractual notices in addition to the statutory notice, but not as an alternative to the following requirement:

> [T]he time and place of making sale of real estate ... shall be publicly advertised ... for at least twenty days successively next before the day of sale, by posting up written or printed notice thereof, at three public places in the county, one of which shall be the door of the court house of the county.

Sayles' Civ.St. art. 2309 (also allowing countywide newspaper publication), *incorporated by reference in* Acts 1889, at 143, ch. 118; *see also International Bldg. & Loan,* 26 S.W. at 497; *Chamberlain v. Trammell,* 61 Tex.Civ. App. 650, 131 S.W. 227, 230 (1910, writ dism'd).

The 1915 amendments to the 1889 enactment altered the notice requirement by authorizing "the parties, as an *alternative* but not as a *cumulative* right, to contract as to a method of notice." *Roedenbeck Farms,* 124 S.W.2d at 936 (construing Acts 1915, 1st C.S., at 32, ch. 15 amendment to Rev.Civ.St.1911, art. 3759). Still, parties could not contract for one exclusive method of notification until further amendments were assembled in 1925 as article 3810, the immediate predecessor to the current statute. *Roedenbeck Farms,* 124 S.W.2d at 936 (comparing amended Rev.Civ. St.1911 with article 3810).

Notice to the debtor by certified mail plus posting on the courthouse door replaced the old posting requirement in 1976. Acts 1975, at 2354, ch. 723, § 1. The Texas legislature codified this version of the notice requirement into Section 51.002 of the Property Code without substantive amendment. Acts 1983, at 3475, ch. 576. To this day, the law governing nonjudicial foreclosure sales incorporates significant aspects of the 1889 enactment:

> (1) notice of the time and place of the public foreclosure sale
>
> (2) posted on the county courthouse door for three consecutive weeks prior to
>
> (3) the foreclosure sale between 10:00 a.m. and 4:00 p.m. on the first Tuesday of the month in
>
> (4) the county where the realty is located.

*Compare* Tex.Prop.Code Ann. § 51.002 (Vernon Supp.1993) *and McFarlane,* 134 S.W.2d at 1051 *with* Acts 1889, at 143, ch. 118 *and International Bldg. & Loan,* 26 S.W. at 497.

Since 1885, most of the amendments to this formal sales procedure have affected some facet of the notice requirement. *See, e.g.,* Tex.Prop.Code Ann. § 51.002 (Vernon Supp.1993). Obviously, the legislature has both deliberated over the nonjudicial foreclosure process and shown itself willing to address any perceived weakness in the statutory scheme. In all its revisions to the notice requirement, from the 1915 amendments to the amendments of 1991, the legislature has never extended the right to notice of foreclosure to guarantors.

We need not rely solely on this legislative silence, however. In 1991 Texas enacted two statutes designed to protect both note makers and guarantors in deficiency suits rising from nonjudicial foreclosures on realty. Tex. Prop.Code Ann. §§ 51.003, 51.005 (Vernon Supp.1993). Trenchantly, neither statute adopts the language of Section 51.002 that identifies the "debtor" as each person "obliged to pay the debt." Rather, Section 51.003 extends specifically to all "persons against whom recovery of the deficiency is

sought." Tex.Prop.Code Ann. § 51.003(c). Even more pointedly, Section 51.005 expressly inserts the phrase "including guarantors" after referring to "persons obligated on the indebtedness." Tex.Prop.Code Ann. § 51.005(c). In both statutes, the legislature chose unambiguous language that differs from the phrasing of Section 51.002 when it intended to embrace the guarantor within the scope of the statute's effect.

■ Finally, the plain wording of Section 51.005 militates against the Longs' interpretation of the notice requirement by limiting the right to contest the foreclosure price with the following language: "The suit must be brought not later than the 90th day after the date of the foreclosure sale or the date the guarantor receives actual notice of the foreclosure sale, whichever is later." Tex.Prop. Code Ann. § 51.005(b). The legislature clearly envisioned the prospect of guarantors defending suits for deficiency after they received no notice of the foreclosure sale. This notion cannot abide the Longs' contention that notice serves as an element of the secured party's cause of action. Rather than construe Section 51.002(b) as anathema to Section 51.005(b), we must prefer the interpretation that brings the two provisions into harmony. Tex. Gov't Code Ann. § 311.025. Accordingly, we hold that guarantors of a note secured by realty do not enjoy the right to notice of the foreclosure sale.

Although neither relied upon nor cited by the Longs, a distinguishable line of cases has been interpreted to suggest a guarantor's right to notice. *See, e.g., Micrea, Inc. v. Eureka Life Ins.,* 534 S.W.2d 348 (Tex.Civ. App.—Fort Worth 1976, writ ref'd n.r.e.) (citing, however, only cases that involve rights of note makers and their contractual privies). One commentator has inferred that the *Micrea* court tacitly acknowledged the guarantor's right to notice by holding that such rights were waived in the note and the guaranty. *Texas Foreclosure: Law & Practice* 67, § 2.39 (M. Baggett ed. 1984) (citing *Micrea* without discussion of guarantor's contractual privity with note maker as source for right to notice); *contra American Sav. & Loan v. Musick,* 531 S.W.2d 581, 588 (Tex. 1975) ("There is no requirement that person-

al notice [of the foreclosure sale] be given to persons who were not parties to the deed of trust.") Significantly, *Micrea* involved a deficiency suit against the note maker and a guarantor who actually signed the promissory note itself as well as the separate guaranty contract. *See also, Carruth Mortgage Corp. v. Ford,* 630 S.W.2d 897 (Tex.App.—Houston [14th Dist.] 1982, no writ) (similarly concerning both note maker and guarantor and citing a case that discussed only note maker's right to notice, *Williams v. Henderson,* 580 S.W.2d 37 (Tex.App.—Houston [1st Dist.] 1979, no writ)). *But see Thompson v. Chrysler First Business Credit,* 840 S.W.2d 25 (Tex.App.—Dallas 1992, no writ) (requiring notice to guarantor in deficiency suit that did not involve note maker, citing *Caruth Mortgage, Williams* and a case regarding note maker's rights under Texas UCC, *Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890 (Tex.1991)). The instant case entails neither the intermingled rights of guarantors and note makers nor a guarantor who signed the note and therefore partakes in the nature and rights of a note maker. We are purely considering the discrete rights of guarantors as distinct from the note maker's statutory right to notice of the foreclosure sale.

*Hernandez* and *Attayi* pointedly compared the expansive entitlement of Business and Commerce Code guarantors with the abridged rights of guarantors under the Property Code. Analogously, the note maker's entitled status relative to the disfranchised position of the guarantor underlies the court's decision in *Miller v. University Sav.,* 858 S.W.2d 33 (Tex.App.—Houston [14th Dist.] 1993, no writ). Considering a guarantor's appeal from summary judgment, the *Miller* court addressed the secured party's duty to notify the guarantor of its intention to accelerate:

> [T]his case does not involve a holder's obligation to a maker. Instead, it involves the liability of a *guarantor* when the maker defaults on the loan. While we agree with appellant that Texas law requires a holder to notify a maker of his intent to accelerate a note, it does not require that notice of intent to accelerate be given to a guaran-

tor. (citation omitted). While a guaranty clause may incorporate certain terms and provisions of the underlying promissory note, it is a separate contract with separate ramifications and obligations imposed on those parties.

*Id.* at 36; *cf. Musick,* 531 S.W.2d at 588 (secured parties need not notify trust beneficiaries of foreclosure sale under deed executed by trustees); *Ray v. Spencer,* 208 S.W.2d 103, 104 (Tex.Civ.App.—Texarkana 1947, writ ref'd) (secured parties need not notify unconditional guarantors of underlying default to fasten liability). In denying the right to notice of acceleration, *Miller* conforms with other cases holding certain rights and defenses of the note maker do not automatically inure to the guarantor. *See, e.g., Houston Sash & Door Co. v. Heaner,* 577 S.W.2d 217 (Tex.1979) (guarantor cannot assert maker's usury defense); *Universal Metals & Mach. v. Bohart,* 539 S.W.2d 874 (Tex.1976) (guarantor cannot assert maker's defense of forgery); *cf. Hopkins v. First Nat'l Bank,* 546 S.W.2d 84 (Tex.Civ.App.—Corpus Christi 1976), *writ ref'd n.r.e. per curiam,* 551 S.W.2d 343 (Tex.1977) (guarantor assumes note maker's obligations without necessarily assuming corresponding rights). Insofar as the availability of the maker's rights and defenses are concerned, this line of jurisprudence belies the canard that a guarantor is a favorite of the law. We find no legal basis for omitting notice of the realty foreclosure sale from the roster of note maker's rights that do not benefit the guarantor. Cases that adjudge the entwined rights of note makers and guarantors and cases concerning guarantors who participate in making the note fail to persuade us otherwise.

Having disavowed the Longs' right to notice of the foreclosure sale independent of Long Engineering's statutory right, we need not determine whether they waived those rights in the guaranty. We therefore overrule the Longs' first two points of error.

■ In related points of error three and four, the Longs contest the legal sufficiency of NCNB's notice to Long Engineering as the note maker. A nonjudicial foreclosure under deed of trust will suffer challenges to its validity from only the note maker, the note maker's privies, and parties with a property interest affected by the sale. *Goswami v. Metro. Sav. & Loan,* 751 S.W.2d 487, 489 (Tex.1988).

Historically, standing to insist upon the note maker's prerogative of personal notice of the foreclosure sale required privity of estate with the note maker. *See Hampshire v. Greeves,* 104 Tex. 620, 143 S.W 147, 150 (Tex.1912); *Weaver v. Acme Fin.,* 407 S.W.2d 227, 231 (Tex.Civ.App.—Corpus Christi 1966, no writ); *Collier v. Ford,* 81 S.W.2d 821, 824 (Tex.Civ.App.—Galveston 1935, writ dism'd w.o.j.). Parties to the note and deed instruments may also impeach the validity of the foreclosure sale·as the note maker's privies of contract, an equally ancient basis for standing. *See Hinzie v. Kempner,* 82 Tex. 617, 18 S.W. 659, 661 (1891); *cf. Merrimack Mut. Fire Ins. v. Allied Fairbanks Bank,* 678 S.W.2d 574, 577 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (insurer who was not party to note and deed instruments lacked standing to contest validity of foreclosure and subsequent reformation of foreclosure documents); *Lockwood v. Lisby,* 476 S.W.2d 871, 875 (Tex. Civ.App.—Fort Worth 1972, writ ref'd n.r.e.) (absent notice of assignment to mortgagee, mortgagors' assignee is not entitled to separate notice but may question validity of notice to mortgagors as their contractual privy).

■ Modern cases have expanded the class of parties with standing to dispute the validity of the foreclosure sale by adopting a more liberal attitude toward this privity requirement. *Compare Hampshire,* 143 S.W. at 150 *with Musick,* 531 S.W.2d at 586. Under the current approach, the Longs need only have established a property interest in the deed of trust realty to impute a flaw in NCNB's notice to Long Engineering. *See Musick,* 531 S.W.2d at 586. But the Longs merely claim that they "would have been present to bid at the foreclosure sale [or] would have had third parties to bid" if they had received notice. This fails to describe any recognizable property interest, let alone a mutual or successive right of property creating privity of estate with Long Engineering. Nor do the Longs claim the right to

criticize the notice to Long Engineering as parties to the note or deed of trust. *See FDIC v. Coleman,* 795 S.W.2d 706, 710 (Tex. 1990) (guarantors are not automatically parties to note). We find the Longs wanting for the standing necessary to attack the validity of NCNB's notice to Long Engineering and overrule their third and fourth points of error.

In two final points of error, the Longs claim they were damaged by alleged irregularities in the foreclosure sale. To support their contention that we must therefore reverse the trial court and set the foreclosure sale aside, the Longs cite *Musick.* In *Musick,* however, the supreme court founded the parties' standing to challenge the validity of the foreclosure sale on their property interest as established by the facts of record. *Musick,* 531 S.W.2d at 586. By signing separate and unconditional guaranty contracts and by failing to retain a property interest in the realty under deed of trust, the Longs removed themselves from the scope of *Musick.*

If the Longs have any recourse against NCNB, it must emanate from the guaranty contracts. *But see Lester v. First Am. Bank,* 866 S.W.2d 361 (Tex.App.—Austin 1993, n.w.h.) (guarantors may also claim statutory relief in foreclosure sales conducted after April 1, 1991, effective date of Tex.Prop.Code Ann. § 51.003). Two cases delineate the legal boundaries of NCNB's relationship to the Longs under their guaranties: *Coleman, supra,* and *RTC v. Westridge Court,* 815 S.W.2d 327 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (specifically considering law prior to effect of § 51.003).

In *Coleman,* the supreme court looked sternly on the principals of a corporate note maker when they sought to avoid deficiency judgment after protecting the note maker from its creditors. *Coleman,* 795 S.W.2d at 709. Addressing a claim similar to the Longs' assertion that the value of the underlying realty exceeded the outstanding debt and should thus satisfy the whole obligation, the court said:

> If the value of the property really approximated the debt against it, as their counsel claimed, they should have caused [the corporate note maker] to sell it. . . . Furthermore, to impose a duty of good faith on a creditor in these circumstances is an impossible burden. . . . Even if the [secured party] had a duty of good faith in these circumstances, [the guarantors] waived it. . . . The guaranties gave the [secured party] the right to ignore the collateral and obtain a judgment from [the guarantors] for the full amount of the debt, even if the collateral might have been sold to satisfy part of the debt.

*Id.* at 709–10 (footnote omitted). The guarantors in *Coleman* did not, however, allege irregularities in the foreclosure sale. *Id.* at 708. If *Coleman* sets a ceiling for the duty owed to guarantors at something lower than good faith, *Westridge Court* defines the floor:

> Simply put, we must determine what duties [the secured party] owed [the guarantors]. . . . [W]ith respect to the foreclosure sale, the mortgagee owes but one duty to the mortgagor, to conduct the sale *properly.* (citation omitted). We concur. We further hold that a mortgagor [sic] owes a guarantor the same duty.

*Westridge Court,* 815 S.W.2d at 332 (the court meant to hold that it is a *mortgagee* and not a *mortgagor* who owes the guarantor this duty; this is clear from the broader context of the quoted language). By allowing guarantors automatic standing to question whether the foreclosure sale was proper, *Westridge Court* seemingly contradicts case law from *Hampshire* and *Hinzie* through *Goswami* and *Musick.*

Yet this is not the best understanding of *Westridge Court.* The court clearly separated the conclusion that the foreclosure sale was valid from its determination that the sale was conducted properly, a distinctly lower standard of performance. *Westridge Court,* 815 S.W.2d at 332. Although the court equated the rights of the guarantor with the rights of the mortgagor, it never discussed the mortgagor's statutory rights or rights under the deed of trust. Instead, the court limited its examination of the record to the singular assessment of whether the secured party "committed some act of wrongdoing, misconduct, or unfairness." *Westridge Court,* 815 S.W.2d at 331 (citing *Tarrant Sav.*

*v. Lucky Homes,* 390 S.W.2d 473, 475 (Tex. 1965)). This analysis appropriately considers the secured party's contractual performance under its most general duty of care, which the secured party owes both guarantor and note maker alike. By stripping away any commentary on the note maker's statutory rights or the terms of the particular note, deed of trust and guaranty, *Westridge Court* reaches the underlying common law.

 Fundamentally, promissory notes and guaranties are contracts. *Strickland v. Coleman,* 824 S.W.2d 188, 191 (Tex.App.— Houston [1st Dist.] 1991, no writ); *Fourticq v. Fireman's Fund Ins.,* 679 S.W.2d 562, 564 (Tex.App.—Dallas 1984, no writ). As such, notes and guaranties imply that a secured party owes both the note maker and guarantor the duty to discharge its respective contractual obligations properly. *Southwestern Bell Tel. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991) (explaining this often misunderstood duty in reference to *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947): by failing to perform "properly, the defendant breached its contract"); *Coulson v. Lake L.B.J. Mun. Util. Dist.,* 734 S.W.2d 649, 651 (Tex.1987); *Compton v. Polonski,* 567 S.W.2d 835, 839 (Tex. Civ.App.—Corpus Christi 1978, no writ). The secured party's negligent failure to exercise skill and care in performing its obligations under a guaranty contract would constitute a breach of this common-law duty. *Accord Coulson,* 734 S.W.2d at 651; *Montgomery Ward,* 204 S.W.2d at 510; *Compton,* 567 S.W.2d at 839. Unless the guaranty contract provides otherwise, the secured party must employ such ordinary care in disposing of the security. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 223 (Tex. 1992); *Blocksom v. Guaranty State Bank & Trust,* 251 S.W. 1025, 1027 (Tex. Comm'n App.1923, holding approved); *Traywick v. Gunn,* 293 S.W. 273, 275 (Tex.Civ.App.—Texarkana 1927, no writ); *cf. SEI Business Sys. v. Bank One Texas,* 803 S.W.2d 838, 840 (Tex.App.—Dallas 1991, no writ) (guarantor can complain only if secured party fails to conduct foreclosure "in a proper manner").

 Reading *Westridge Court* as addressing these duties effects the court's holding without negating the well-settled law limiting standing to contest the validity of a nonjudicial foreclosure. Moreover, this understanding of *Westridge Court* conforms with the determination by the supreme court in *Coleman* that secured parties do not owe guarantors a duty of good faith. As a result, *Westridge Court* confirms the guarantor's right to avoid liability for a deficiency by showing negligence in the secured party's performance under the guaranty contract. *Accord T.O. Stanley Boot Co.,* 847 S.W.2d at 223. This differs from the note maker's right to set aside an invalid foreclosure sale under the law of wrongful foreclosure. *See generally Durkay v. Madco Oil,* 862 S.W.2d 14 (Tex.App.—Corpus Christi 1993, writ denied), (discussing defects in foreclosure sale that note makers or their privies may allege to show invalidity and voidness); *Charter Nat'l Bank—Houston v. Stevens,* 781 S.W.2d 368 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (discussing history of wrongful foreclosure under Texas law).

 Just like the note maker's right to notice of various actions on the note, however, the guarantor's right to insist upon the proper disposition of realty securing the note can be waived. *Coleman,* 795 S.W.2d at 710; *see also Athari v. Hutcheson,* 801 S.W.2d 896, 897 (Tex.1991) (discussing note maker's waiver of rights). Inferring surrender of a hypothetical duty of good faith from the creditor's contractual right to execute the guaranty without first seeking satisfaction from the collateral, the supreme court expounded:

> [I]f a creditor had a duty to the guarantors, and presumably the same duty to the debtor itself, to liquidate collateral only in such a way as to minimize a deficiency on the debt, the proper discharge would almost always raise material issues of fact.... Deficiency suits could rarely be resolved by summary judgment, and would necessitate a full trial on the merits. Commercial transactions require more predictability and certainty than this rule would afford.

*Coleman,* 795 S.W.2d at 710. The guaranties signed by the Longs contain a similar relinquishment of the necessity that NCNB pro-

ceed against the security before enforcing the guaranties. Under *Coleman,* such an explicit disavowal of any interest in the security apparently precludes the right to object to the manner of the collateral's disposition. *See also T.O. Stanley Boot Co.,* 847 S.W.2d at 223 (right to assert impairment of collateral defense may be waived in guaranty contract); *Smith v. U.S. Nat'l Bank,* 767 S.W.2d 820, 823 (Tex.App.—Texarkana 1989, writ denied) (impairment of subrogation and equity of redemption rights waived by language similar to waiver in Longs' guaranties); *Simpson v. MBank Dallas,* 724 S.W.2d 102, 106 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (duty to protect collateral waived by language similar to waiver in Longs' guaranties).

Some authorities suggest that the secured party revives the duty of care in foreclosure by electing to pursue the security after the guarantor has waived this as a prerequisite to liability. *See, e.g., Frederick v. United States,* 386 F.2d 481, 486 (5th Cir.1967); *Coleman,* 795 S.W.2d at 711 (Mauzy, J., dissenting); *Coleman v. FDIC,* 762 S.W.2d 243, 245 (Tex.App.—El Paso 1988), *rev'd,* 795 S.W.2d 706 (Tex.1990). Although it does not appear that the Longs would prevail under this more progressive view, we do not reach that determination because the supreme court has unequivocally adopted the contrary approach. We must therefore overrule the Longs last two points of error.

The trial court's judgment is affirmed.