AMERICAN SAVINGS AND LOAN
ASSOCIATION OF HOUSTON,
Petitioner,

v.

**Mary Ann MUSICK et al., Respondents.**

**No. B–5081.**

Supreme Court of Texas.

Dec. 17, 1975.

Rehearing Denied Jan. 21, 1976.

Lee, Brown & Wylie, Charles B. Wolfe, Anderson, Brown, Orn & Jones, Nelson Jones, Houston, for petitioner.

Cox, Pakenham & Roady, Joe G. Roady, Houston, for respondents.

SAM D. JOHNSON, Justice.

This is a trespass to try title case involving three tracts of land and turning on the construction and validity of three legal instruments: (1) a deed to the mortgagor; (2) a deed of trust; and (3) a trustee's deed conveying the three tracts of land to the mortgagee. American Savings and Loan Association of Houston, the mortgagee, brought this action against several claimants, including the mortgagors (Meyer Jacobson and T. S. Kent), and the parties through whom the mortgagors claimed title (TWI Development Company and Mary Ann Musick, individually and as administratrix of the estate of her husband, Levoy Musick, deceased). The trial court instructed a verdict awarding one tract, 618.7 acres, to American Savings, one tract, 41.4305 acres, to Mary Ann Musick, individually and as administratrix of the estate of Levoy Musick, deceased, and one tract, 16.6 acres, to TWI Development Company. The Houston Court of Civil Appeals [14th Dist.] affirmed the trial court's award of the two smaller tracts but reversed the judgment as to the 618.7-acre tract and remanded that

portion of the case. 517 S.W.2d 627. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

Prior to the transactions from which this controversy arose, the 41.4305-acre tract was owned by Levoy Musick in his own name and the other two tracts were owned by TWI Development Company, a corporation solely owned by Levoy Musick. In June 1964 Musick and TWI conveyed the three tracts to Harry Holmes, Jr. and W. M. Wheless, Sr., reserving options to repurchase their respective tracts. Four months after the conveyance to Holmes and Wheless, Levoy Musick died and under the terms of his will his wife, Mary Ann Musick, became the owner of the TWI stock as well as the repurchase options. The will named Meyer Jacobson, an attorney, as independent executor. During the course of this litigation Jacobson resigned as independent executor and Mary Ann Musick was appointed administratrix with will annexed.

Upon advice from Jacobson and T. S. Kent, an old friend and business associate of her husband, Mary Ann Musick agreed to a plan for exercising her repurchase options. The plan called for her to convey some of the land in question to Kent and Jacobson so that they could use it as collateral in securing the funds necessary to exercise the options. In accordance with the plan, on December 18, 1964 the following three conveyances were made.

1. TWI and Mary Ann Musick exercised their respective options, and Holmes and Wheless thereupon executed warranty deeds conveying the 41.4305-acre tract to Mrs. Musick and the other two tracts to TWI.

2. Mary Ann Musick, as president of TWI conveyed to Kent and Jacobson, by a general warranty deed, property described therein as follows:

"618.7 acres of land, more or less, out of the WILLIAM WHITE SURVEY, Abstract No. 829, Harris County, Texas, *more particularly described by metes and bounds in deed of trust of even date* *herewith* from T. S. Kent and Meyer Jacobson to Ralph B. Lee, Trustee, recorded in the office of the County Clerk of Harris County, Texas." [Emphasis added.]

3. Kent and Jacobson executed a deed of trust to Ralph B. Lee as trustee for the benefit of American Savings. The deed of trust purported to convey the three tracts of land in question, labeled as Tract A, 618.7 acres; Tract B, 41.4305 acres; and Tract C, 16.6 acres. Metes and bounds descriptions were provided for each tract.

The deed of trust secured a loan of $150,000 from American Savings to Kent and Jacobson. No payments were ever made on the promissory note executed by Kent and Jacobson and it fell into default. On February 1, 1966 the property was sold at a trustee's sale to American Savings for $25,000, and a trustee's deed to American Savings was executed.

American Savings originally brought this action against TWI, Mary Ann Musick, Kent, Jacobson, and several other parties who were involved in a dispute within the Musick family as to the ownership of the land. TWI and Mary Ann Musick filed a cross action against American Savings, Kent, Jacobson, and Elliott & Waldron Title & Guaranty Company claiming title to the three tracts of land and seeking to set aside the deed to Kent and Jacobson, the deed of trust, and the trustee's deed to American Savings. Subsequently, the cross action against Elliott & Waldron Title & Guaranty Company was nonsuited and the dispute among the remaining parties to the cross action was severed from the claims and issues among the members of the Musick family. American Savings, TWI, and Mary Ann Musick appealed from the judgment of the trial court; Kent and Jacobson did not appeal.

We will consider, first, what, if any, property passed under the warranty deed to Kent and Jacobson and the deed of trust from Kent and Jacobson to Ralph B. Lee. Next, we will determine the validity of the trustee's sale and the trustee's deed to

American Savings. Finally, we will consider whether election of remedies or judicial estoppel precludes judgment for American Savings.

## I.

◼ The court of civil appeals apparently concluded that the 618.7-acre tract passed under the deed to Kent and Jacobson as well as under the deed of trust to Ralph B. Lee. The court held, however, that the 41.4305- and the 16.6-acre tracts were not conveyed by the aforesaid instruments. American Savings, TWI, and Mary Ann Musick filed applications for writ of error objecting to the lower court's holding.

American Savings contends that the deed to Kent and Jacobson conveyed all three tracts described by metes and bounds in the deed of trust because the deed referred to the deed of trust for a more particular description of the land. American Savings further contends that the metes and bounds description in the deed of trust must prevail over the call for acreage in the deed to Kent and Jacobson. We conclude, however, that the lower courts correctly decided that the 41.4305- and the 16.6-acre tracts did not pass under the deed and the deed of trust; only the 618.7-acre tract was conveyed by the two instruments.

Although the deed did refer to the deed of trust for a more particular description of the land conveyed, the deed did not purport to convey all of the tracts described in the deed of trust. This is not a case where a metes and bounds description should prevail over a call for acreage, *Texas Pacific Coal & Oil Company v. Masterson*, 160 Tex. 548, 334 S.W.2d 436 (1960); there is no inconsistency between the call for acreage in the deed and the metes and bounds description in the deed of trust. The 618.7-acre call in the deed can be harmonized with the deed of trust because Tract A in the deed of trust contained the identical call for acreage. In *Winters v. Slover*, 151 Tex. 485, 251 S.W.2d 726 (1952), this court stated:

"The petitioners' contention that the specific description of the entire 165½ acres tract should control over the general description which referred to the deed from T. J. Slover to Chilton expressly reserving one-half of the minerals, is answered by the well recognized rule that a general description will not be disregarded where it can be harmonized with a particular description." 251 S.W.2d 726 at 728.

*Sharp v. Fowler*, 151 Tex. 490, 252 S.W.2d 153 (1952), relied upon by American Savings, is not apposite. In *Sharp* this court summarized the property description in the deed as follows:

"Following the grant there is designated the number of acres granted and the county and survey in which the land is located. . . . But the description is made certain by the language '*being the same land described in*' the Frost deed." [Emphasis added.] 252 S.W.2d 153 at 154.

The distinction between *Sharp* and the instant case is that in *Sharp* the deed incorporated *all* of the land described in the deed to which reference was made. The deed to Kent and Jacobson simply referred to the deed of trust for a more particular description without incorporating *all* of the property described therein.

◼ In their application TWI and Mary Ann Musick contend that American Savings failed to prove a chain of title to the 618.7-acre tract because the deed of trust and the promissory note secured thereby were materially altered and therefore void. Mary Ann Musick filed an affidavit of forgery in the trial court claiming that the deed of trust was altered after execution by addition of the 41.4305- and the 16.6-acre tracts. Furthermore, it is evident that the figure "618.7" in the note's description of the acreage provided as security was erased and retyped "676.7305." We hold however, that the alleged alterations of the deed of trust and the promissory note did not make the instruments void because the alterations were not material. The 41.4305- and the

16.6-acre tracts did not pass under the deed to Kent and Jacobson; consequently, Kent and Jacobson could not have conveyed them under the deed of trust, nor could they have been made security for the promissory note executed by Kent and Jacobson. The inclusion of the additional tracts in the deed of trust and the promissory note had no legal effect. *See Reed v. Roark*, 14 Tex. 329 (1855).

## II.

■ The court of civil appeals remanded the case for a determination whether the foreclosure sale and the trustee's deed of the 618.7-acre tract should be set aside. The court stated that fact issues were presented as to whether the price paid by American Savings was inadequate and whether certain irregularities tainted the foreclosure sale. TWI urges that we declare the trustee's deed void as a matter of law, while American Savings contends that the trustee's deed should be upheld.

American Savings argues that TWI has no standing to challenge the trustee's sale because it was not a party to the deed of trust. The court of civil appeals held, however, that TWI possesses standing under the rule set forth in *Estelle v. Hart*, 55 S.W.2d 510, 513 (Tex.Com.App., 1932). *Estelle v. Hart* held that a junior lienholder has standing to show the invalidity of a trustee's sale because his interest in the property is affected by such a sale. The court of civil appeals interpreted *Estelle v. Hart* "to mean that third parties have standing to challenge such a sale of their rights are effected [*sic*] thereby." We agree with this statement of the law, but the question remains whether TWI's rights were affected by the trustee's sale of the 618.7-acre tract.

American Savings claims that TWI's interests were not affected by the trustee's sale because in 1964 TWI conveyed all of its interest in the 618.7-acre tract to the mortgagors, Kent and Jacobson. We would agree with American Savings' contention but for the evidence in the record indicating that Kent and Jacobson took title to the 618.7 acres as trustee for the benefit of TWI pursuant to a verbal agreement with Mary Ann Musick. The testimony regarding the verbal agreement is conflicting, but in any event, it is undisputed that TWI retained some interest, equitable or otherwise, in the 618.7-acre tract. For this reason we are unable to hold on the present record that TWI lacks standing to challenge the trustee's sale of the 618.7 acres.

We hold that TWI's attack on the trustee's sale is without merit. TWI's principal objection to the trustee's sale is that the substitute trustee, who conducted the sale, was not properly authorized. Ralph B. Lee, the original trustee, was both an attorney and president of American Savings. He was named trustee on most if not all deeds of trust securing American Savings' loans. Lee testified that he instituted the following procedure for handling trustee sales: (1) American Savings would send the notice of default to his law firm; (2) a "Resignation of Trustee" form was automatically prepared for his signature by an employee of the firm; and (3) an associate in the law firm was automatically appointed substitute trustee. Lee admitted that in the instant case, as with most defaults, he was not personally requested to act by American Savings.

The deed of trust provides:

"*In the case of the absence, death, inability, refusal, or failure of the Trustee herein named to act*, a successor and substitute may be named, constituted, and appointed by the Association, or other holder of said indebtedness, or any part thereof, . . . and such right to appoint a successor or Substitute Trustee shall exist as often as, and whenever from any of said causes any Trustee, original or substitute, cannot, does not, or will not act." [Emphasis added.]

TWI contends that the appointment of the substitute trustee was not caused by "absence, death, inability, refusal, or fail-

ure" of the original trustee, Ralph B. Lee, and therefore the appointment of the substitute trustee was not authorized by the deed of trust. The question narrows to whether there was a refusal or failure to act within the meaning of the deed of trust, the remaining causes for appointment of a substitute trustee being clearly inapplicable. According to TWI, there was no refusal or failure to act by Lee because, as Lee admitted in his testimony, he was not personally requested to act. The court of civil appeals declined to hold that the alleged irregularity in the appointment of the substitute trustee made the trustee's deed void, but held instead that the alleged irregularity combined with an inadequate consideration received at the trustee's sale would afford the basis for an attack under *Cline v. Cline*, 323 S.W.2d 276 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.).

■ We hold that there was no irregularity in the appointment of the substitute trustee, The "Resignation of Trustee" form executed by Ralph B. Lee constituted a refusal to act. A trustee may resign and thereby refuse to act even though no request has been made upon him. *Bracken v. Bounds*, 96 Tex. 200, 71 S.W. 547 (1903), relied upon by TWI, is distinguishable from the instant case. In *Bracken*, as here, the deed of trust authorized the appointment of a substitute trustee if the trustee failed or refused to act. The mortgagee never requested the trustee to act. Instead, the mortgagee requested that the trustee resign and permit the appointment of a substitute trustee. Following the trustee's resignation, the mortgagee appointed his brother as substitute trustee. This court held that the substitute trustee was not properly authorized, emphasizing that the mortgagee "could not, for his own convenience, bring about the condition to authorize himself to select another trustee . . . ." 71 S.W. 547 at 548. The instant case does not involve an allegation that American Savings prompted Ralph B. Lee to resign as trustee.

■ We further hold that Lee's resignation was preceded by a request from American Savings that he sell the property. Although the request was not made upon Lee personally, it was made upon Lee's law firm which, according to the office procedure instituted by Lee, prepared the "Resignation of Trustee" form. Lee could have handled the default notice and prepared the "Resignation of Trustee" form himself, but instead he quite properly assigned these duties to his employees who were following his instructions. It is true that the powers conferred upon a trustee in a deed of trust must be strictly followed, *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671 (1942), but a trustee may delegate certain ministerial duties to his employees and persons under his supervision. *See Wilson v. Armstrong*, 236 S.W. 755 (Tex.Civ.App.—Beaumont 1921, no writ).

In addition to the alleged irregularity in the appointment of the substitute trustee, the court of civil appeals found several other irregularities in the trustee's sale. The court remanded the case to resolve fact issues concerning the alleged irregularities and the adequacy of the consideration paid by American Savings at the sale.

■ The court noted that appraisal testimony indicated a value of all three tracts on the date of foreclosure at $338,365, though American Savings bought the three tracts for $25,000. However, the rule is well established that mere inadequacy of consideration is not grounds for setting aside a trustee's sale if the sale was legally and fairly made. *Tarrant Savings Association v. Lucky Homes, Inc.*, 390 S.W.2d 473 (Tex.1965). There must be evidence of irregularity, though slight, which irregularity must have caused or contributed to cause the property to be sold for a grossly inadequate price. *Sparkman v. McWhirter*, 263 S.W.2d 832, 837 (Tex.Civ.App.—Dallas 1953, writ ref'd).

■ We have already held that the method of appointment of the substitute trustee did not constitute an irregularity in

the trustee's sale. The other alleged irregularities cited by the court of civil appeals lack substance. The court stated that the alleged alterations of the deed of trust and the promissory note constituted an irregularity and it also noted that Meyer Jacobson was an officer in the title company that American Savings requested to close the transaction on December 18, 1964. We do not view either of these circumstances as affecting the legality or fairness of the trustee's sale. An additional irregularity cited by the court of civil appeals was that neither TWI nor Mary Ann Musick received notice of the foreclosure sale. However, the deed of trust did not provide for personal notice to Mary Ann Musick or TWI. There is no requirement that personal notice be given to persons who were not parties to the deed of trust. Finally, the court of civil appeals found an irregularity in the fact that American Savings knew at the time of the sale that title to the three tracts was in dispute among members of the Musick family. We do not construe this circumstance as detracting from the legality or fairness of the trustee's sale. A mortgagee is not required to await a final resolution of such title disputes before conducting a trustee's sale.

### III.

Elliott & Waldron Title & Guaranty Company issued to American Savings a mortgagee's title policy in the face amount of $150,000 covering the property conveyed by the deed of trust dated December 18, 1964. Elliott & Waldron subsequently entered receivership proceedings in Travis County. In May 1966 American Savings filed a proof of claim against Elliott & Waldron seeking $150,000. The proof of claim stated in part: "In making our preliminary check, we discovered that neither Kent nor Jacobson had title to the property in question." What American Savings apparently discovered in its preliminary check was the controversy among various members of the Musick family about ownership of the three tracts. The receiver for Elliott & Waldron allowed the claim to the extent of $75,000, and American Savings executed an agreement, releasing Elliott & Waldron and the receiver from any obligations under the policy. The court of civil appeals remanded the case to determine whether the facts establish an election of remedies by American Savings, and the court further held that the trial court erred in excluding the documents and evidence tending to prove election of remedies.

This court defined the scope of the election of remedies doctrine in *Custom Leasing, Inc. v. Texas Bank & Tr. Co. of Dallas*, 491 S.W.2d 869 (Tex.1973):

> "An election of remedies is the act of choosing between two or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts. When a party thus chooses to exercise one of them he abandons his right to exercise the other remedy and is precluded from resorting to it." 491 S.W.2d 869 at 871.

Election of remedies is not a favorite of equity and its scope should not be extended. *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 393 (1945).

In *Custom Leasing* we quoted the following rule from 28 C.J.S. *Election of Remedies* 8, at 1073:

> " 'Where remedies pursued against different persons are repugnant and inconsistent, the election of one bars the other, but concurrent and consistent remedies may all be pursued until satisfaction is had. The bar of an election does not apply to the assertion of distinct causes of action against different persons arising out of independent transactions with such persons.' " 491 S.W.2d 869 at 871.

The question therefore is whether a suit for trespass to try title is inconsistent with a claim against a title insurance company alleging failure of title. We find no inconsistency between these remedies. The claim against the title insur-

ance company is based on a contractual right that exists separate and distinct from any final determination of ownership of the property. A claim against a title insurance company invokes the insurer's obligation to pay the claim or defend title to the property. There is certainly no inconsistency between seeking a defense by the insurance company and filing a trespass to try title action.

The instant case is quite similar to *Liberty Mut. Ins. Co. v. First Nat. Bank in Dallas*, 151 Tex. 12, 245 S.W.2d 237 (1951). In that case a bank depositor suffered a loss because of unauthorized checks written on its account. This court held that the depositor did not pursue inconsistent remedies by first claiming indemnity from its insurer and then suing the bank to recover the amounts paid out on the unauthorized checks. The court reasoned that the depositor suffered a loss covered by the insurance policy until the bank could be compelled to make payment. Similarly, in the instant case American Savings sustained a loss covered by its title insurance, namely inability to obtain title to the property, and the loss continues to exist until title to the property is finally established.

The court of civil appeals also erred in holding that American Savings is estopped from claiming title to the property by the statement in its proof of claim that a preliminary check revealed that title was not in Kent and Jacobson. One of the requirements for application of the doctrine of judicial estoppel is that the statement must be deliberate, clear, and unequivocal. *Griffin v. Superior Insurance Company*, 161 Tex. 195, 338 S.W.2d 415 (1960). The statement by American Savings in its proof of claim was not clear and unequivocal. American Savings merely stated the results of its preliminary title check; it did not admit that its title had failed.

In summary, we agree with the lower courts that the 41.4305- and the 16.6-acre tracts should be awarded to Mary Ann Musick and TWI respectively. With respect to the 618.7-acre tract, we reverse the court of civil appeals and render judgment for American Savings.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.