final 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-94-00277-CV








Temple Land Partnership; Scott Nix, Individually and as Partner of Temple Land


Partnership; Nix Realty, Inc.; and James Patrick Nix, Appellants




v.




 Lela Colwell, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT


NO. 142,453-B, HONORABLE RICK MORRIS, JUDGE PRESIDING







 Appellee Lela Colwell filed suit against appellants Temple Land Partnership
("TLP"), Nix Realty, Inc., Scott Nix, and James Patrick Nix to set aside a foreclosure sale and
for a declaratory judgment that the foreclosure sale was void. The trial court granted Colwell's
motion for summary judgment. Appellants contend on appeal that the trial court erred in granting
the motion for summary judgment because Colwell presented no summary judgment evidence of
(1) an irregularity in the foreclosure sale or (2) that any alleged irregularity caused or contributed
to cause the property to be sold for a grossly inadequate price. Appellants also challenge the trial
court's award of attorney's fees to Colwell under the Uniform Declaratory Judgments Act. Tex.
Civ. Prac. & Rem. Code Ann. § 37.009 (West 1986). We will affirm.


BACKGROUND


 The basic facts are undisputed. On June 28, 1974, J. F. Clawson and his wife
conveyed by warranty deed a 35.22-acre tract of land located in Bell County, Texas to Janice and
Marquis Brent Whitley. That day, the Whitleys executed a "wraparound vendor's lien note" in
the amount of $20,600.00 payable to Clawson, secured by a deed of trust lien. The land changed
hands more than once, and on March 28, 1977, the property was conveyed to Richard E. Clayton
and his wife. On March 6, 1984, the Clawsons executed a partial release of one acre of the tract,
leaving a 34.22-acre tract covered by the deed of trust lien. 

 In May and August 1991, after Clayton experienced some tax problems, the
Internal Revenue Service ("IRS") recorded three federal tax liens against the property. In
September 1991, the IRS executed a Notice of Seizure and a Notice of Public Auction Sale of the
34.22-acre tract. About that time, Clayton contacted Scott Nix, a certified public accountant, for
assistance with the federal tax liens. In October 1991, the IRS executed a Notice of Sealed Bid
Sale of the tract. Appellee Colwell submitted a sealed bid in the amount of $12,011.00. On
November 19, 1991, the IRS executed a Certificate of Sale of Seized Property to Colwell. Shortly
after the IRS sold its interest in the land to Colwell, Scott Nix contacted the IRS to learn the
identity of the purchaser. In December 1991, Nix formed Nix Realty, Inc. and TLP. (1) On
December 27, 1991, TLP acquired the deed of trust lien and the vendor's lien on the property
from Clawson. At the time the liens were transferred, only $395.93 was owed on the note.

 On March 25, 1992, the IRS released the three federal tax liens after receiving the
money bid by Colwell. Shortly thereafter, Scott Nix learned of the release. In April 1992, TLP
appointed James Patrick Nix, Scott Nix's brother, as substitute trustee under the deed of trust. 
James Patrick Nix, on behalf of TLP, prepared to foreclose on and sell the tract of land. A
Notice of Default, Acceleration, and Foreclosure and a Notice of Substitute Trustee's Sale were
delivered to the Claytons. (2) Scott Nix filed the notice of sale with the Bell County Clerk on April
14, 1992. He then posted notice in three locations: a photography studio in Temple, Texas; the
laundry room of an apartment building in Troy, Texas; and the "old" courthouse, one of two
buildings which house courts in Bell County. Notice was not posted at the "new" courthouse. 
The "old" courthouse was built in 1884 and currently houses the Commissioner's court, the
county courts, and the county clerk's office. The "new" courthouse was constructed in 1964, and
houses the district attorney's office, the district courts, and the district clerk's office. At the time
of the foreclosure sale on May 5, 1992, the property had a fair market value of between
$25,000.00 and $30,000.00, and approximately $470.93 was owed on the wraparound vendor's
lien note. At the foreclosure sale, TLP sold the property to Nix Realty for a bid of $2,001.00. 

 Colwell did not know about the sale and did not attend. In June 1992, Colwell
received a quitclaim deed from the IRS conveying to her all of Clayton's rights, title, and interest
in the land. (3) After Colwell received the deed, she learned that Nix Realty had purchased the
property. Colwell contacted Scott Nix, but he declined to negotiate with her. In January 1993,
Scott Nix informed Colwell that he would consider an offer from her to purchase the tract for
$20,000. In May 1993, Colwell filed suit to set aside the foreclosure sale and for a declaratory
judgment (4) that the foreclosure sale and the deed were void, or, in the alternative, for damages. 
She also sought attorney's fees under the Uniform Declaratory Judgments Act. Tex. Civ. Prac.
& Rem. Code Ann. § 37.009 (West 1986). On August 11, 1993, Colwell filed a motion for
summary judgment. On March 1, 1994, the trial court granted the motion, cancelling the
foreclosure sale and the substitute trustee's deed and awarding Colwell attorney's fees in the
amount of $4906.25. 

 Appellants contend on appeal that the trial court erred in granting the motion for
summary judgment because Colwell presented no summary judgment evidence of an irregularity
in the foreclosure sale or that such an irregularity caused or contributed to cause the property to
be sold for a grossly inadequate price. Appellants also challenge the trial court's award of
attorney's fees.



DISCUSSION


 In their first and second points of error, appellants contend that the trial court erred
in granting Colwell's motion for summary judgment because her summary judgment proof failed
to establish: (1) an irregularity in the manner in which the foreclosure sale was conducted and
(2) that an irregularity caused or contributed to cause the property to be sold for a grossly
inadequate price. The standards for reviewing a motion for summary judgment are well
established: (1) The movant for summary judgment has the burden of showing that no genuine
issue of material fact exists and that she is entitled to judgment as a matter of law; (2) in deciding
whether a disputed material fact issue precludes summary judgment, evidence favorable to the
nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of
the nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985).

 In order for Colwell to have the foreclosure sale set aside, there must be evidence
of an irregularity, "though slight," which caused or contributed to cause the property to be sold
for a grossly inadequate price. American Sav. & Loan Ass'n v. Musick, 531 S.W.2d 581, 587
(Tex. 1975). The greater the inadequacy of the consideration paid, the smaller the irregularity
need be to void the sale. Charter Nat'l Bank--Houston v. Stevens, 781 S.W.2d 368, 373 (Tex.
App.--Houston [14th Dist.] 1989, writ denied) (explaining Allen v. Pierson, 60 Tex. 604, 607
(1884)). In determining whether the price paid is grossly inadequate, the trial court may consider
many things, including expert opinion testimony, the trier of fact's own experience, and matters
of common knowledge. Group Purchases, Inc. v. Lance Inv., Inc., 685 S.W.2d 729, 731 (Tex.
App.--Dallas 1985, writ ref'd n.r.e.). The undisputed evidence clearly indicates that the sale
resulted in a gross disparity between the price paid and the value of the property. (5) The
foreclosure sale price was $2001.00, yet both sides testified that the value of the property was
between $25,000 and $30,000. The purchase price was between one-twelfth and one-fifteenth of
the land's value. The Musick requirement of a grossly inadequate sale is satisfied. See Musick,
531 S.W.2d at 587.

 Mere inadequacy of consideration, however, does not provide grounds for setting
aside a sale which was legally and fairly made. Id. Under Musick, Colwell must also prove that
there was an irregularity and that the irregularity caused or contributed to cause the grossly
inadequate price. Id. The most striking alleged irregularity of the sale is that the notice was
posted only at the "old" courthouse in Bell County. The Texas Property Code requires that notice
of a foreclosure sale be posted at the courthouse door. Tex. Prop. Code Ann. § 51.002(b)(1)
(West 1995). (6) After filing the sale notice with the county clerk, Scott Nix posted the notice on
a bulletin board near the door of the old courthouse; he did not post a similar notice at the new
courthouse.

 Colwell argues that Texas Rule of Civil Procedure 648, which defines "courthouse
door" as the door of the building which houses the district courts, applies to section 51.002 in
specifying where notice must be posted. Tex. R. Civ. P. 648. We note, however, that Rule 648
applies only to judicial sales. Id. We need not address whether this definition should be extended
to private foreclosure sales because we can resolve the issue solely by examining section 51.002. 
Section 51.002 provides that notice of a sale must be given "by posting at the courthouse door of
each county in which the property is located a written notice designating the county in which the
property will be sold." Tex. Prop. Code Ann. § 51.002(b)(1) (West 1995). Because there are
two buildings which house courts in Bell County, we cannot hold as a matter of law that section
51.002(b)(1) envisions that notice is sufficient when it is posted only at the door of one of the two
buildings. Therefore, although we disagree with Colwell that notice must be posted only at the
courthouse which houses the district courts, we also disagree with the appellants that posting at
either the old or new courthouse satisfies the statutory notice requirement. (7) Because we cannot
hold as a matter of law that section 51.002(b)(1) allows notice to be posted only at the door of the
old courthouse in Bell County, we conclude that the posting of notice at only that location
constituted an irregularity of the foreclosure sale.

 Additionally, the summary judgment evidence indicates other irregularities in the
sale. The size of the tract of land was incorrectly described in the notice: the notice described
the land as a 35.22-acre tract rather than a 34.22-acre tract. Also, Nix Realty purchased the land
with a check rather than with cash as required by the deed of trust. Based on these irregularities,
the second prong of Musick is satisfied.

 The final prong of the Musick test is that the above irregularities must have "caused
or contributed to cause" the grossly inadequate price at the sale. Musick, 531 S.W.2d at 587. 
We conclude that the inadequate notice and the collusive nature of the sale contributed to the low
price paid for the land. A comparison of the publicized IRS sale with the Nix foreclosure sale
demonstrates the effect that these irregularities had on the Nix foreclosure sale. The IRS sale was
held on November 19, 1991. The IRS published a Notice of Seizure and Public Auction Sale in
September 1991 and a Notice of Sealed Bid Sale in October 1991. The sale was advertised for
bid and conducted at arm's length. As a result, Colwell acquired the IRS's interest in the property
for her bid of $12,011.00. The Nix foreclosure sale, on the other hand, was quite different. 
Notice was not properly posted as required by section 51.002. See Tex. Prop. Code Ann. §
51.002(b)(1) (West 1995). Other notices were placed in a laundry room of an apartment building
and outside a photography studio in Bell County and were not likely to inform the general public
of the sale. 

 The collusive nature of the foreclosure sale also demonstrates the effect of the
irregularities on the price of the land. James Nix conducted the sale on behalf of his brother Scott
Nix's partnership, TLP, and sold the property back to his brother's closely held corporation, Nix
Realty. There is summary judgment evidence that the partnership and the corporation were
formed for the sole purpose of obtaining the lien and subsequently the land. Furthermore,
Clayton, the debtor, had consulted with Scott Nix about his tax problems before TLP and Nix
Realty were formed, and had given Scott Nix the name of the lien holder. As a result of its
collusive nature, the sale brought in only $2001.00, an amount that even appellants concede is
grossly inadequate. 

 Had notice been properly posted at the courthouse door, Colwell would have been
charged with notice of the sale. Stone v. Watt, 81 S.W.2d 552, 555 (Tex. Civ. App.--Eastland
1935, writ ref'd). Under that same presumption that charges Colwell with notice, we may assume
that had she known of the foreclosure sale, she would have attended it in order to protect her
interest in the land. The summary judgment evidence demonstrates that the irregularities at least
contributed to the grossly inadequate price. See Musick, 531 S.W.2d at 587. Appellants' first
and second points of error are overruled.

 Appellants contend in their third point of error that the trial court erred in awarding
attorney's fees of $4,906.25 to Colwell under the Uniform Declaratory Judgments Act. Tex. Civ.
Prac. & Rem. Code Ann. § 37.009 (West 1986). The granting or denial of attorney's fees in a
declaratory judgment action is within the sound discretion of the trial court, and the trial court's
judgment will not be reversed on appeal absent a clear showing of abuse. Oake v. Collin County,
692 S.W.2d 454, 455 (Tex. 1985). Appellants argue that there was no basis for the declaratory
judgment because it added no additional relief to the other remedy in the judgment, voiding of the
foreclosure sale. They contend that the declaratory judgment served no useful or independent
purpose and, therefore, Colwell should not be allowed to recover attorney's fees. See Barnett v.
City of Colleyville, 737 S.W.2d 603, 606-07 (Tex. App.--Fort Worth 1987, writ denied). The
summary judgment evidence, however, indicates that the declaratory judgment served a useful
purpose that was not remedied by the mere voiding of the foreclosure sale. The declaratory
judgment was ordered filed of record with the deed records of Bell County, thereby clearing title
and notifying the public that the Substitute Trustee's Deed was void. The trial court did not abuse
its discretion in awarding attorney's fees under the declaratory judgment statute. See Tex. Civ.
Prac. & Rem. Code Ann. § 37.009 (West 1986). Appellants' third point of error is overruled.

 Having overruled all points of error, we affirm the summary judgment of the trial
court.


 

 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: May 17, 1995

Do Not Publish 
1. [1]  Scott Nix is the president and sole shareholder of Nix Realty. Scott Nix and his wife,
Robin Nix, are the two partners of TLP.
2. [2]  James Patrick Nix and TLP had no duty to give Colwell individual notice because she
was not a debtor on the note. See Tex. Prop. Code Ann. § 51.002(b)(3) (West 1995).
3. [3]  The quitclaim deed was not issued until June 2, 1992, approximately seven months after
the November 19, 1991 sale, because a 180-day redemption period had to be observed.
4. [4]  The declaratory judgment was requested pursuant to the Civil Practices and Remedies
Code. Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1986).
5. [5]  Appellants conceded at oral argument that the price was grossly inadequate.
6. [6]  Section 51.002 provides that notice of a sale of real property under a power of sale
conferred by a deed of trust or other contract lien must be given:


(1) by posting at the courthouse door of each county in which the property is
located a written notice designating the county in which the property will be
sold;


(2) by filing in the office of the county clerk of each county in which the
property is located a copy of the notice posted under Subdivision (1); and


(3) by the holder of the debt to which the power of sale is related serving
written notice of the sale by certified mail on each debtor who, according to
the records of the holder of the debt, is obligated to pay the debt.


Tex. Prop. Code Ann. § 51.002(b) (West 1995).
7. The parties conceded at oral argument that prudent persons post notices at both
courthouse buildings in order to comply with section 51.002(b)(1).