United States Court of Appeals,

Fifth Circuit.

No. 95-50026.

THORNTON, SUMMERS, BIECHLIN, DUNHAM & BROWN, INC., Plaintiff-
Counter Defendant-Appellee,

v.

COOK PAINT & VARNISH, Defendant-Counter Claimant-Appellant,

v.

Don Dick DUNHAM, Executor of the estate of Thomas D. Dunham,
Deceased, Counter Defendant-Appellee,

Clemens & Spencer, Appellee.

May 8, 1996.

Appeal from the United States District Court for the Western
District of Texas.

Before POLITZ, Chief Judge, and HILL[*] and DeMOSS, Circuit Judges.

HILL, Circuit Judge:

Thornton, Summers, Biechlin, Dunham & Brown, Inc. and Don Dick
Dunham, Executor of the Estate of Thomas Dunham (Thornton Summers),
Appellees, brought this action in the United States District Court
for the Western District of Texas to recover legal fees and
expenses allegedly incurred in the defense of Curran Paint &
Varnish Company, f/k/a Cook Paint & Varnish Company (Cook Paint),
Appellant, in the matter styled *Allied Tank Services, Inc. v. Cook
Paint & Varnish Co.* brought in the 166th District Court of Bexar
County, Texas. Cook Paint answered and counterclaimed, asserting
that Thornton Summers and its lead counsel, Thomas Dunham,

_____

[*]Circuit Judge of the Eleventh Circuit, sitting by
designation.

1

committed legal malpractice while defending Cook Paint in the *Allied Tank* case.

The district court held that the doctrine of election of remedies bars Cook Paint from recovering any damages from Thornton Summers and granted Thornton Summers summary judgment. We hold that summary judgment was entered erroneously, and reverse and remand.

## I. BACKGROUND

On May 8, 1990, a few days before *Allied Tank* was scheduled for trial, Cook Paint learned for the first time that its insurance agent, Alexander & Alexander, had failed to notify all of Cook Paint's insurers of the *Allied Tank* suit. On May 12, 1990, Cook Paint itself notified the insurers and demanded that they defend, indemnify, and settle the *Allied Tank* case. The carriers refused, claiming that they were prejudiced by the late notice. Cook Paint sought, but was denied, a continuance, and the case proceeded to trial. Thornton Summers defended Cook Paint. A judgment of approximately $21,000,000 was entered against Cook Paint.

In June, 1990, Cook Paint filed a declaratory judgment action in the United States District Court for the Western District of Missouri against its insurers. Cook Paint asserted that the insurance companies had been obligated in the *Allied Tank* case to provide counsel, a defense, and indemnification, and to make all reasonable efforts to settle the claims against it, and, that they failed to do so.

Also in June of 1990, Cook Paint filed suit in Missouri

against Alexander & Alexander. Cook Paint alleged that Alexander & Alexander had been under a duty to notify Cook Paint's insurers of claims and suits; that the agent represented to Cook Paint that it had notified all of its insurance carriers of the *Allied Tank* suit; but that on May 8, 1990, Cook Paint learned that Alexander & Alexander had not notified excess and umbrella carriers.

On October 4, 1990, Cook Paint, its insurers, and Allied Tank settled their differences. The agreement provided that Allied Tank would receive approximately $7,200,000 from the insurers, and 75% of any money recovered by Cook Paint in the *Alexander & Alexander* lawsuit, in return for a covenant by Allied Tank not to execute on the remainder of its $21,000,000 judgment. Subsequently, Cook Paint paid Allied Tank approximately $6.7 million it had previously received from its insurance carriers. It was required to pay the remaining $450,000 from its own funds to cover an insurance gap created by the insolvency of one of its insurers.

Cook Paint contends that in the fall of 1991, during discovery in the *Alexander & Alexander* suit, it learned for the first time from unspecified documents that Thornton Summers was negligent in failing to advise of a favorable settlement opportunity and in failing to obtain a settlement for Cook Paint in *Allied Tank.* Thereafter, Cook Paint settled the *Alexander & Alexander* lawsuit for $100,000. The suit was dismissed without prejudice to Cook Paint's assertion of any claims it had against Thornton Summers.[1]

---

[1]Cook Paint had filed a motion to join Thornton Summers and Dunham as defendants in the *Alexander & Alexander* lawsuit. The $100,000 was placed in escrow pending the outcome of this

Cook Paint brought a counterclaim against Thornton Summers in this suit claiming damages for malpractice, including the failure of Thornton Summers to investigate the availability of insurance coverage for Cook Paint, and to explore and obtain settlement within Cook Paint's insurance policy limits.

Thornton Summers moved for summary judgment against Cook Paint's malpractice claim, arguing that Cook Paint had made an election of remedies when it sued and settled with its insurance carriers after judgment in the *Allied Tank* case. The district court granted Thornton Summers summary judgment, ruling that all of Cook Paint's claims against Thornton Summers were barred by the doctrine of election of remedies.[2]

We review the grant of summary judgment *de novo*. *Burgos v. Southwestern Bell Telephone Co.,* 20 F.3d 633, 635 (5th Cir.1994). We do not affirm a summary judgment unless we conclude, after an independent review of the record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.;* Fed.R.Civ.P. 56(c).

## II. ANALYSIS

Under Texas law, the election of remedies doctrine may constitute a bar to relief when (1) one successfully exercises an informed choice (2) between two or more remedies, rights or states

litigation.

[2]We also reverse the district court's striking of Cook Paint's affirmative defenses to Thornton Summers' claim for attorney's fees inasmuch as these defenses were predicated upon the malpractice claims which were erroneously foreclosed.

4

of fact (3) that are so inconsistent as to (4) constitute manifest injustice. *Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 851 (Tex.1980). The doctrine does not, however, bar the assertion of inconsistent facts, nor the assertion of concurrent but inconsistent remedies or distinct causes of action against different persons arising out of independent transactions. *Id.* at 852.

The district court found Cook Paint's transactions with its insurers and with Thornton Summers to be "interconnected," not separate or independent. The court wrote:

> ... Cook Paint's suit against its insurers was on the premise that they owed unqualified duties to provide legal counsel, a defense, indemnification, and to make all efforts to reasonably settle the *Allied Tank* suit, and that their failure to do so was without cause and resulted in the adverse verdict and consequent damages. Its suit against its lawyers (and Alexander & Alexander) is premised on the inconsistent theory that their omissions allowed or caused the insurers to refuse to settle, and the failure to settle caused the adverse verdict and resulting damages.

In the district court's analysis, Cook Paint cannot have it both ways—either the insurers' failure to settle caused Cook Paint's damages, or Thornton Summers' negligence caused Cook Paint's damages. Cook Paint, the court concluded, is barred in this lawsuit from asserting a second version of how it was damaged by having previously and successfully asserted an inconsistent version against the insurers.

The district court further found the remedies claimed against the insurers and Thornton Summers to be "repugnant," reasoning that, even if the omissions of Cook Paint's insurers and Thornton Summers *both* harmed Cook Paint, it was the same *harm*—the

5

$21,000,000 verdict which resulted from the lack of a pre-trial settlement. The court held:

> Having successfully settled the carrier suit based on its allegations that the jury verdict and ensuing damages resulted from the carriers' failure to settle, it cannot collect again from Thornton Summers by adopting the inconsistent position that its legal counsel, rather than its insurers, caused the same damages by omissions that precluded a settlement. The election doctrine is used to prevent a double redress for a single wrong (citation omitted).

The district court concluded that Cook Paint is barred from asserting its negligence claims against Thornton Summers by the election of remedies doctrine, the sole purpose of which is "to prevent double recovery for a single wrong." *Slay v. Burnett Trust,* 143 Tex. 621, 187 S.W.2d 377, 393 (1945).

We do not agree. Cook Paint has not asserted a single wrong for which it seeks double recovery. On the contrary, Cook Paint has alleged two wrongs. First, the insurance carriers are alleged to have breached their unqualified duty to Cook Paint to defend, settle, and indemnify. Second, Thornton Summers is alleged to have breached its duty of care to Cook Paint in the *Allied Tank* lawsuit. Furthermore, in its subsequent action against the insurers, Cook Paint was required to attempt to overcome the insurers' defense of late notice—a formidable defense which Cook Paint alleges was provided to the insurance carriers by Thornton Summers. Had Thornton Summers timely evaluated and notified the insurers of Cook Paint's potential exposure in the *Allied Tank* case, it may well be that the subsequent actions against the insurers and against Alexander & Alexander would not have been required, and Cook Paint would not have been relegated to a claim against an insolvent

6

insurance carrier.

Although they are not unrelated, Thornton Summers and the insurers owed independent duties to Cook Paint; the breaches alleged are also independent. Thornton Summers' alleged negligence may have in part caused the insurers to fail in their duties to Cook Paint, but the failure of the insurers was an independent harm. Each tortfeasor owed a separate and independent duty to Cook Paint which it is alleged to have breached. These are independent wrongs.

Claims asserted on inconsistent theories, but which arise from independent wrongs, are not barred by the doctrine of election of remedies. *American Sav. & Loan Ass'n v. Musick,* 531 S.W.2d 581 (Tex.1975). For example, the Texas Supreme Court has held that a suit for trespass to try title against one party is not inconsistent with a claim against a title insurance company for failure of title. *Id.* at 588. The court held that a claim against a title insurance company invokes the insurer's obligation to pay the claim or defend title to the property, and this claim is separate and distinct from the claim of ownership. The loss covered by the title insurance, the inability to obtain title to the property, was separate from the loss of title and continued to exist until title was finally established. *Id.*

Furthermore, not only do Cook Paint's claims arise from different wrongs, but the different wrongs produced different damages. Cook Paint's claim against Thornton Summers is for damages that have never been wholly or even partially recovered.

7

Its settlement with its insurers resulted in Cook Paint's having to pay $450,000 out of its own pocket to Allied Tank.[3]  It also claims attorneys' fees and expenses which it otherwise would not have incurred (some of these are the same fees which Thornton Summers seeks to recover in this suit) as well as those incurred in the declaratory judgment action and the *Alexander & Alexander* lawsuit (approximately $732,898);  economic loss from negative publicity ($6,123,311);  forced sale of the division involved in the *Allied Tank* lawsuit ($12,000,000);  and the approximately $13,000,000 balance of the *Allied Tank* judgment.[4]

In rejecting these damages as support for Cook Paint's contention that this is a different lawsuit from that against the insurers or Alexander & Alexander, the district court held that "[t]here are no separate and independent damages caused by the lawyers' failure to investigate, evaluate, and advise," and that the damages which Cook Paint seeks are equally attributable to the insurers' omissions.

In the district court's assessment, if the case had settled prior to judgment, Cook Paint would not have incurred any of these *other* damages.  Therefore, all of the damages were the result of the verdict which would not have occurred had it not been for the breach by the insurers.  All these damages were "presumably" sought by Cook Paint in the lawsuit against the insurers.

---

[3]In addition, Allied Tank received all the settlement proceeds of approximately $7,200,000.

[4]We express no opinion on whether these or any other alleged damages are recoverable from Thornton Summers.

The district court's opinion seems to be based on the conclusion that the damages represented by the verdict have been *satisfied* by Cook Paint's prior settlement with the insurers rather than upon the election of remedies doctrine:

> While the damages Cook Paint seeks may have been attributable to the lawyers' omissions, they are equally attributable to the insurers' (and Alexander & Alexander's) omissions and have been *satisfied by settlement....* Having successfully resolved its claims against the insurers, Cook Paint is barred by the election of remedies doctrine from seeking to recover the *same damages* from the lawyers.

Cook Paint's theory, however, is that the omissions of Thornton Summers *caused* its insurers to fail to settle.[5] If Thornton Summers breached its duty to Cook Paint to evaluate Cook Paint's liability exposure and explore and obtain settlement within policy limits, it was responsible for the insurers' refusal to settle prior to trial, and, therefore, for the verdict and additional elements of damage now claimed by Cook Paint.[6] These are not the same damages, nor have they been satisfied.

For the foregoing reasons, we hold that the remedy pursued by Cook Paint in this lawsuit is not inconsistent with that pursued by it in its lawsuit against its insurers. We reverse the summary judgment and final judgment entered by the district court, the striking of Cook Paint's affirmative defenses and remand this case

---

[5]We express no opinion on whether the insurers may have a right to contribution from Thornton Summers, but note that each owed a separate duty to Cook Paint such that Cook Paint has a separate cause of action against each.

[6]We express no opinion on whether Cook Paint's theory that it can recover the full amount of the *Allied Tank* verdict as damages is well-founded.

9

for further proceedings.

REVERSED and REMANDED.