**Paul ACKLEY and Laura Ackley**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Successor to Resolution Trust Corporation, as Receiver of Continental Savings Association.**

Civil Action No. G–96–336.

United States District Court, S.D. Texas, Galveston Division.

Oct. 22, 1997.

Kenneth G. Lupo, Houston, TX, for Plaintiffs.

James D. Brissee, Badger & Garner, Sugarland, TX, Defendant.

## ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Plaintiffs Paul and Laura Ackley bring this action for wrongful foreclosure against Defendant Federal Deposit Insurance Corporation as successor to Resolution Trust Corporation ("RTC") and Receiver of Continental Savings Association. This action was originally brought in the 149th Judicial District for Brazoria County, Texas. Defendant timely removed it to this Court pursuant to 12 U.S.C. § 1819, and now moves for Summary Judgment on all claims and causes of actions asserted by Plaintiffs. For the reasons stated below, Defendant's Motion for Summary Judgment is enthusiastically **GRANTED**.

### I. FACTUAL BACKGROUND

Plaintiffs Paul and Laura Ackley had two separate mortgage loans in 1989:(1) a 30–year home loan for $60,000 loan, taken out in 1980, and (2) a 5–year loan on a vacant lot adjoining their home for $8,000, taken out in 1984. Both loans were held by Continental Savings Association ("Continental"). In 1989, the Ackleys paid off the promissory note on the vacant lot mortgage and requested a release of the lien on the lot. On January 16, 1990 Continental mailed a release to the Ackleys, mistakenly naming as the released loan the $60,000 home mortgage. It is undisputed that the Ackleys had not yet paid off the home mortgage.

The Ackleys claim that they attempted to rectify the situation by informing Continental that the wrong mortgage had been released. There is no evidence on record of their attempts. The Ackleys filed the home mortgage release with the county clerk on January 19, 1990. The Ackleys have not made a payment on the home mortgage since 1989, nor have they saved or escrowed any of the money still due on that loan.

Laura Ackley filed for Chapter 7 bankruptcy in October of 1989. Continental

ceased efforts to collect on the loan until August of 1990, after learning that Ms. Ackley's bankruptcy was closed. Continental sent the Ackleys two notices of its intent to accelerate the home mortgage loan due to default: one on August 3, 1990, and one on April 15, 1991. Neither notice elicited a response from the Ackleys. The RTC became Receiver of Continental on August 1, 1991 and assigned the foreclosure to Aguren, Urquhart, Dodson, Shaffer & McCluskey, P.C. The RTC appointed Laurie McCluskey, an attorney representing the RTC, as substitute trustee to conduct the foreclosure sale on October 8, 1991. She mailed a notice of acceleration of the defaulted home mortgage to the Ackleys on September 25, 1991. On October 14, 1991, McCluskey mailed notice to the Ackleys that the property would be sold at a foreclosure sale on November 5, 1991. Either Paul or Laura Ackley, or both, signed a Receipt for Certified Mail for the April 15 notice of intent to accelerate, the September 25 notice of acceleration, and the November 5 notice of foreclosure. Moreover, proper affidavits exist establishing that all of the above-mentioned notices were sent.

The RTC, as Receiver of Continental, filed an action in this Court previously on April 28, 1995. In that action, the RTC moved for summary judgment that the validity and enforceability of the note and deed of trust related to the home mortgage were unaffected by the January 11, 1990 release and for reformation of the release to reflect the mortgage on the vacant lot. The Ackleys failed to respond to the Motion for Summary Judgment. On March 19, 1996, this Court granted the summary judgment and entered a declaratory judgment that the release had no effect on the enforceability of the home mortgage loan and that the release be reformed accordingly.

The Ackleys then brought this action for wrongful foreclosure on April 25, 1996, alleging that the foreclosure was not carried out properly. Trial was scheduled for April 21, 1997, but was suspended on that day pending Rule 408 efforts. Defendant FDIC was or-

dered to tender a letter to Plaintiffs' counsel setting out the principal due on the home mortgage loan through June 1997, the simple interest due through June 1997, all taxes due through June 1997, and attorney fees of $2,500. Plaintiffs were given until July 15, 1997 to bring all of the above obligations current by refinancing. They did not do so. Defendant filed this Motion for Summary Judgment on August 1, 1997.

## II. ANALYSIS

Essentially three arguments are submitted by Plaintiffs to support their claim that the foreclosure sale should be declared invalid. First, they argue that the appointment of a substitute trustee to conduct the sale was not properly recorded and should be set aside. Second, they argue that the notices required for foreclosure were not mailed properly and did not relate to the foreclosure. Finally, they argue that the mistaken release of the homestead lien, recorded prior to the foreclosure, terminated the mortgagee's right to foreclose on the property.[1]

■ Regarding the Plaintiffs' last argument, this Court issued an order on March 19, 1996 that the release be reformed to reflect the $8,000 lot lien rather than the $60,000 home mortgage lien. Thus the plaintiffs' argument is moot and the right to foreclose was not terminated by the release.

■ Next the Court finds that the foreclosure notices mailed to the Ackleys were valid and met the foreclosure requirements under Texas law. To effect a valid foreclosure, the holder of a defaulted note must give notice of intent to accelerate with demand for payment and time to cure, notice of acceleration, and notice of foreclosure sale at least 21 days before the sale. *Ogden v. Gibraltar Sav. Ass'n,* 640 S.W.2d 232, 233 (Tex.1982); *F.D.I.C. v. Massingill,* 24 F.3d 768, 775 (5th Cir.1994); Tex. Prop.Code § 51.002(b) (Vernon 1995).

In this case, all three notices were given: Continental mailed two notices of intent to accelerate, one on August 3, 1990 and one on

---

**1.** Plaintiffs concede, however, that the faulty release did not extinguish the debt on the home-   stead.

April 15, 1991, and the law firm representing the RTC mailed a notice of acceleration on September 25, 1991, and a notice of foreclosure on October 14, 1991. The foreclosure took place on November 5, 1991. The Court finds that the notice requirements were complied with in this case.

■ Plaintiffs argue that the foreclosure was improperly executed because the required notices were not properly mailed in the proper time frame. There are two facets to the notice argument. First, Plaintiffs apparently argue that the two notices of intent to accelerate were too early and did not relate to the November foreclosure. Continental mailed the April 15 notice of intent to accelerate within six months of the actual foreclosure. The notice warned that if the Ackleys failed to cure their default, Continental would initiate foreclosure proceedings on May 15, 1991. The Ackleys argue that, because foreclosure did not actually occur on May 15, the April 15 notice does not relate to the actual foreclosure. This argument is absurd. Clearly Continental was not required to foreclose by May 15 for this notice to be valid. The notice merely stated that proceedings would be *initiated* at that time. Despite Plaintiffs' assertions to the contrary, there is no authority requiring that the acceleration take place *immediately* after the notice of intent to accelerate. If anything, the delay in actual foreclosure should have been helpful to the Ackleys, giving them more time to cure.

■ Plaintiffs make a myriad of technical arguments relating to the importance of postmarks, but exactly what they are attempting to support is unclear. They argue that if no postmark appears on the certified mail receipt, there is no evidence that the notices were ever mailed. Even assuming that the postal technicalities painstakingly

pointed out by Plaintiffs render the certified mail receipts inadequate, authority cited by Plaintiffs themselves establishes that the notices were properly mailed. Under TEX. PROP.CODE § 51.002(e), "[t]he affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service" by certified mail. Mailing of the notice of intent to accelerate is established by the affidavit of Jacklynn Caskey, an employee of Continental. The notice of acceleration and notice of foreclosure are established by the affidavit of Rebecca Urquhart, an attorney with the firm that mailed the notices. Plaintiffs have asserted no affirmative evidence to dispute that the notices were mailed by certified mail within the proper time frame.[2] Accordingly, the Court finds that the notice of intent to accelerate, the notice of acceleration, and the notice of foreclosure were all timely and related to the November 5, 1991 foreclosure.

■ Finally, Plaintiffs argue that the appointment of the trustee to conduct the foreclosure sale was not validly executed. The basis of their argument is that; although the deed of trust required the recordation of an appointment of substitute trustee, the appointment was not recorded until approximately two years after the sale. This fact is not fatal to the foreclosure. The purpose of recording a document is to give constructive notice of its contents. TEX. PROP.CODE § 13.002. McCluskey sent the Ackleys a notice of foreclosure sale on October 14, 1991 which also informed them of the substitute trustee appointment. Therefore the Ackleys had *actual* notice of the appointment and cannot complain that they did not have *constructive* notice. Moreover, they cannot show any harm from the RTC's failure to comply with the strict requirements of the deed of trust, or that the appointment in any way affected the foreclosure sale. Therefore,

**2.** Plaintiffs cite Texas case law for the proposition that summary judgment should not be granted unless all of the movant's evidence is uncontroverted. Plaintiffs are reminded that this case is being tried before a United States District Judge, not in state court. State law does not govern in procedural matters before this Court, as Plaintiffs' counsel should be well aware. In federal court, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead must come forward with specific facts to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citing FED.R.CIV.P. 56(e)). Merely controverting evidence is not enough; Plaintiffs have the burden of coming forward with affirmative evidence to disprove Defendant's evidence.

the Court finds that the RTC's appointment of McCluskey as substitute trustee was valid. *See University Sav. Ass'n v. Springwoods Shopping Center,* 644 S.W.2d 705, 706 (Tex. 1982) (where plaintiff makes no showing of harm from failure to record appointment, actual notice bars wrongful foreclosure action); *American Sav. and Loan Ass'n of Houston v. Musick,* 531 S.W.2d 581, 588 (Tex.1975) (an irregularity in the foreclosure sale is tested by whether or not it affects "the legality or fairness of the trustee's sale").

After charitably addressing the merits of Plaintiffs' trivial, technical arguments, the Court notes in closing that this is a frivolous case filed by two people attempting to recruit this Court to help them in their efforts to milk an administrative error for all it is worth. Plaintiffs argue that they "attempted to contact [Continental] regarding the error but were unable to convince the personnel ... that an error had been made" and only stopped making payments on the loan as a last resort to get Continental's attention. In that regard, the Court finds it illuminating that Plaintiffs neither saved nor escrowed the payments, failed to respond to foreclosure notices, and never made any written request for the correct release. Moreover, they recorded the incorrect release within two days of receiving it. This Court has bent over backwards to accommodate and placate Plaintiffs by giving them ample opportunity to cure their default and settle these issues in an amicable manner. The Court's efforts have been met with no response and with more frivolous litigation and hypertechnical arguments about minutiae having absolutely no effect on Plaintiffs or on the legality of Defendant's actions.

Boiled down to its essentials, this case is about two Plaintiffs grasping at anything to continue benefiting from a mistake which has already unjustly enriched them by providing rent-free housing for over six years. As soon as the inevitable crush of legitimate paperwork uncovered the release error, Plaintiffs began fighting tooth and nail to keep their golden goose alive. Plaintiffs' counsel is warned that manifest Rule 11 sanctions will result if he attempts to file anything further in this case,[3] and the Court feels it has been extremely magnanimous in not assessing sanctions or costs against Plaintiffs as of yet. Accordingly, for the reasons set forth above, Defendant's Motion for Summary Judgment is hereby **GRANTED,** and all claims are **DISMISSED WITH PREJUDICE.** All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date. The Court further **ORDERS** that the parties file no further pleadings in this Court, including Motions to Reconsider and the like, subject to Rule 11 sanctions and cost apportionment.

**IT IS SO ORDERED.**

---

**3.** To illustrate the frivolity of the Plaintiffs' suit, the Court notes that Plaintiffs' counsel, Kenneth Lupo, has submitted an affidavit asserting himself as an "expert" in real estate law to buttress his feeble arguments. Mr. Lupo is reminded that each and every attorney who submits a brief on the law to this Court has the obligation to fully and truthfully submit an accurate statement of the applicable law. Mr. Lupo's attempt to bootstrap this obligation into a formalized sworn affidavit is highly offensive to this Court. Furthermore, as any "expert" in the law should be well aware, expert testimony is allowed only to help the trier of fact determine *facts* in issue, not legal issues. FED.R.CIV.P. 702.